Gregory H. King, NV Bar No. 7777
ghk@paynefears.com
Sarah J. Odia, NV Bar No. 11053
sjb@paynefears.com
PAYNE & FEARS LLP
Attorneys at Law
7251 W. Lake Mead Blvd., Suite 525
Las Vegas, NV 89128
Telephone: (702) 382-3574
Facsimile: (702) 382-3834

Attorneys for Plaintiffs
GREYSTONE NEVADA, LLC and
U.S. HOME CORPORATION

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GREYSTONE NEVADA, LLC, an Delaware limited liability company and U.S. HOME CORPORATION, a Delaware Corporation, | CASE NO.:    2:11-cv-1424-RCJ-CWH |
| Plaintiffs, | **MOTION TO COMPEL ARBITRATION** |
| vs. | |
| ANTHEM HIGHLANDS COMMUNITY ASSOCIATION, a Nevada non-profit corporation; and DOE HOMEOWNER ASSOCIATIONS 1-100; and DOE HOMEOWNERS 101-5000, inclusive, | |
| Defendants. | |

COME NOW, Plaintiffs, GREYSTONE NEVADA, LLC and U.S. HOME CORPORATION , by and through their counsel of record PAYNE & FEARS, LLP, and hereby move this Honorable Court for an order compelling certain homeowner-members of Defendant, the ANTHEM HIGHLANDS COMMUNITY ASSOCIATION to arbitrate the disputes which are the subject of this action, pursuant to the governing arbitration agreements entered into between Lennar and Defendant's homeowner-members, whom Defendant purports to represent, and pursuant to the Federal Arbitration Act 9 U.S.C. §§ 1, *et seq.*

This Motion is made and based upon the Points and Authorities filed concurrently herewith, all pleadings and papers on file herein, and such oral argument as may be heard.

DATED: October 20, 2011          PAYNE & FEARS LLP


By:/s/ Gregory H. King
GREGORY H. KING, NV Bar No. 7777
SARAH J. ODIA, NV Bar No. 11053
7251 W. Lake Mead Blvd., Suite 525
Las Vegas, NV 89128
Telephone: (702) 382-3574

Attorneys for Plaintiffs
GREYSTONE NEVADA, LLC and U.S. HOME
CORPORATION


## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This lawsuit relates to high-zinc content, "yellow brass" plumbing fitting claims being asserted on behalf of homeowners in the Clermont, Earlstone and Glengarry sub-communities of single-family homes located within the Anthem Highlands Master Development in Clark County, Nevada. This is just one of a series of similar claims brought by counsel for Defendant the ANTHEM HIGHLANDS COMMUNITY ASSOCIATION (hereafter "HOA") on behalf of numerous homeowners and associations throughout the Las Vegas valley. As this Court is well aware, counsel for the HOA is attempting to join thousands of homeowners throughout the valley into a single class action lawsuit against numerous homebuilders, subcontractors and manufacturers.[1] However, in so doing, they have ignored the obligations of many homeowners throughout the valley to individually arbitrate their yellow brass claims.

The United States Supreme Court has recently confirmed the liberal federal policy favoring and enforcing arbitration pursuant to the Federal Arbitration Act, 9 U.S.C.A. §1, *et seq. See, Stolt*

---

[1] *See*, Motion to Certify Class filed in *Fulton Park Unit Owners' Association, et al. v. PN II, Inc., et al*, Case No. 2:11-cv-00783, attached hereto as Exhibit "1."

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

*Stolt-Neilsen S.A., et al. v. Animalfeeds International Corp*, 559 U.S. ---, 130 S.Ct. 1758 (2010) and *AT&T Mobility, LLC v. Concepcion, et al*, 563 U.S. ---, 131 S.Ct. 1740, 1750-51, 179 L.Ed.2 742 (2011). In those decisions, the Supreme Court also confirmed the reasonableness and enforceability of provisions within arbitration agreements that limit the parties that are to participate in each arbitration and that prohibit consolidation of arbitration proceedings.

Through this motion, Plaintiffs GREYSTONE NEVADA, LLC and U.S. HOME CORPORATION (hereinafter collectively "Lennar"), seek to compel certain members of the HOA to pursue their claims through arbitration. Each of these homeowners, identified within Exhibits "D," "E" and "F," to the Affidavit of Heather R. Thompson, submitted herewith, signed separate purchase agreements that contain provisions requiring them to arbitrate any dispute relating to their home, including disputes regarding the construction and performance of the home. The homeowners' yellow brass claims fall squarely within the scope of these arbitration agreements. These agreements also specifically limit the parties that may participate in each arbitration to Lennar, the individual homeowner and in some instances, Lennar's implicated trade partners and insurers.

Lennar has notified the HOA, through its counsel, of Lennar's intent to arbitrate the HOA's members' yellow brass claims pursuant to the agreements and has asked the HOA to notify its members of Lennar's demand in this regard. Nevertheless, the HOA has refused to acknowledge the arbitration agreements and continues to pursue the yellow brass claims, in a representative capacity on behalf of the individual homeowners within the Clermont, Earlstone and Glengarry sub-communities, in clear violation of the terms of the arbitration agreements.

Due to the HOA's failure to acknowledge the arbitration agreements and continued violation of their terms, Lennar hereby respectfully requests that this Court issue an order compelling certain homeowners within the Clermont, Earlstone and Glengarry communities, who entered into written arbitration agreements and whom the HOA purports to represent, to arbitrate their yellow brass claims as provided for in the arbitration agreements.[2] .

---

[2] Counsel for Lennar acknowledges that the Clermont, Earlstone and Glengarry Homeowners are not parties to this action; however, the HOA is purportedly pursuing the homeowners' claims on their behalf under NRS 116.3102.

## II. <u>FACTUAL BACKGROUND</u>

**A.    THE CONSTRUCTION AND SALE OF EVERY HOME AT ISSUE HERE IS GOVERNED BY AN ARBITRATION AGREEMENT.**

At issue in this action are three single-family home sub-communities within the Anthem Highlands Master Development in Clark County, Nevada: The Clermont Community developed by Plaintiff Greystone Nevada, LLC ("Clermont"); the Earlstone Community developed by Plaintiff U.S. Home Corporation ("Earlstone"); and the Glengarry Community developed by Plaintiff U.S. Home Corporation ("Glengarry").  Each of the homes at issue within the three communities were constructed in accordance with the terms set forth in individual purchase agreements entered into between Lennar and the homeowner.  Every purchase agreement at issue here contains a written arbitration agreement which encompasses any and all disputes between Lennar and the individual homeowner relating to the home that is the subject of the agreement.

Depending upon the close of escrow date of the home, two different, but similar versions of arbitration agreements were incorporated into the purchase agreements governing the construction and sale of the homes within the Clermont Community.  One is a stand-alone agreement and the other is within the purchase agreement itself.  For the convenience of the Court and the parties, these two versions of arbitration agreements will be referred to as "Clermont Agreement 1" and "Clermont Agreement 2."  Exemplars of Clermont Agreement 1 and Clermont Agreement 2 are attached to the Affidavit of Heather R. Thompson, submitted herewith, as Exhibits "A" and "B," respectively.

Each of the homes within the Earlstone and Glengarry Communities developed by U.S. Home are governed by a third arbitration agreement that is within the purchase agreement itself. These agreements will be referred to herein as the "Earlstone and Glengarry Agreements."  An Exemplar of the Earlstone and Glengarry Agreement is attached to the Affidavit of Heather R. Thompson as Exhibit "C."

### 1.    Scope of the Arbitration Agreements

All of the arbitration agreements governing the three communities at issue here are broad in scope and clearly encompass the homeowners' yellow brass claims.  Clermont Agreement 1

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

provides:

> *Homeowner* and *Greystone* agree that the mediation and arbitration procedures described herein shall be the sole, exclusive, and final means of resolving any *Dispute* between them, and/or between their respective successors in interest. As used herein, the term "*Dispute*" means any claim, dispute or disagreement of any nature whatsoever regarding the *Home*, including, without limitation any dispute of any nature whatsoever, arising from, under, or connected in any way with, the construction or performance of the *Home* (including patent and/or latent deficiencies), the Warranty, *Greystone's* sale of the *Home*, the performance of *Greystone's* obligation in connection with the *Home*, or any services provided by *Greystone*.[3]

Similarly, Clermont Agreement 2 states as follows:

> [A]ny Dispute (as hereinafter defined) shall first be submitted to mediation and, if not settled during mediation, shall thereafter be submitted to binding arbitration as provided by the Federal Arbitration Act (9 U.S.C. §§ 1, *et seq.*) and not by or in a court of law or equity. "Disputes" (whether contract, warranty, tort, statutory or otherwise), shall include, but are not limited to, any and all controversies, disputes or claims (1) arising under, or related to, this Agreement, the Property, the Community or any dealings between Buyer and Seller; (2) arising by virtue of any representations, promises or warranties alleged to have been made by Seller or Seller's representative; and (3) relating to personal injury or property damage alleged to have been sustained by Buyer, Buyer's children or other occupants of the Property, or in the Community.[4]

The Earlstone and Glengarry Agreements provide:

> The parties to this Agreement specifically agree that … any dispute (whether contract, warranty, tort, statutory or otherwise), including, but not limited to, (a) any and all controversies, disputes or claims arising under, or related to, this Agreement, the property, or any dealings between the Buyer and Seller …; (b) any controversy dispute or claim arising by virtue of any representations, promises or warranties alleged to have been made by Seller or Seller's representative; and (c) any personal injury or property damage alleged to have been sustained by Buyer on the property or in the subdivision, shall first be submitted to mediation and, if not settled during mediation, shall thereafter be submitted to binding arbitration … and not by or in a court of law.[5]

---

[3] *See*, Mediation & Arbitration Agreement dated March 31, 2007 between Greystone and Ramil & Teresa Del Rosario regarding the home located at 2757 Auchmull Street within the Clermont Community, attached as Exhibit "A" to the Affidavit of Heather R. Thompson, submitted herewith as Exhibit "2."

[4] *See*, Purchase and Sale Agreement dated August 16, 2009 between Greystone and William N. Cervantes for the purchase of the home located at 2716 Blairgowrie Drive within the Clermont Community at ¶ 16, attached as Exhibit "B" to the Affidavit of Heather R. Thompson, submitted herewith as Exhibit "2."

[5] *See*, Purchase and Sale Agreement dated May 10, 20007 between U.S. Home and Jason Feinberg for the purchase of the home located at 2760 Drumlanrig Street within the Glengarry Community at ¶18, attached as Exhibit "C" to the

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

## 2.    The Agreements Specifically Limit Arbitration Participants

The terms of the arbitration agreements specifically limit the parties who may participate in any arbitration held pursuant to the terms of the agreement.  Clermont Agreement 1 provides that "[u]nless prior written consent of *Homeowner* and *Greystone* is obtained, the parties to the arbitration shall be limited to *Homeowner*  and *Greystone* … ."[6]  Clermont Agreement 2 similarly provides that "Buyer and Seller further agree … that Seller may, at its sole election, include Seller's contractors, subcontractors and suppliers, as well as any warranty company and insurer as parties to the mediation and arbitration; and that the mediation and arbitration will be limited to the parties specified herein."[7]  The Earlstone and Glengarry Agreements also specify "that Seller shall have the option to include its subcontractors and suppliers as parties  in the mediation and arbitration; and that the mediation and arbitration will be limited to the disputes involving the parties specified herein … ."[8]

## 3.    The Agreements Include Pre-Arbitration Procedures

Clermont Agreement 1 includes a pre-arbitration inspection and mediation procedure, as follows:

> *Homeowner* agrees to provide *Greystone* and its designees with reasonable access (including emergency access if necessary) to the *Home* in order to inspect and test the *Home*.  *Homeowner* further agrees to provide *Greystone* and its designees with reasonable access to the *Home* in order to complete necessary and/or required repairs, modifications and alterations to the *Home* … .  Furthermore, *Homeowner* agrees that, prior to proceeding with mediation or arbitration as described herein, *Homeowner* shall give *Greystone* and its designees a reasonable opportunity to inspect, test and/or complete necessary or requested repairs to the *Home*.
> …
> *Homeowner* and *Greystone* agree that prior to resorting to formal arbitration (as described in Section 5 below) with respect to any Dispute, they will use their best efforts in good faith to resolve such *Dispute* through the mediation procedures describe[d] in Section 4 hereof.
> …

---

Affidavit of Heather R. Thompson, submitted herewith as Exhibit "2."

[6] Exhibit "A" to the Affidavit of Heather R. Thompson at ¶ 5.

[7] Exhibit "B" to the Affidavit of Heather R. Thompson at ¶ 16.4.

[8] Exhibit "C" to the Affidavit of Heather R. Thompson at ¶18

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

If mediation in accordance with Section 4 hereof has failed to resolve any *Dispute* … , then as the sole, exclusive and final means of resolving such *Dispute*, either party shall initiate arbitration … .[9]

The pre-arbitration procedure provided for by Clermont Agreement 2 states as follows:

16.1    The parties to this Agreement specifically agree … that any Dispute (as hereinafter defined) shall first be submitted to mediation and, if not settled during mediation, shall thereafter be submitted to binding arbitration … .
…
16.2 … If one or more issues directly or indirectly relate to alleged deficiencies in the design, materials or construction , all parties and their experts shall be allowed to inspect, document (by photograph, videotape or otherwise) and test the alleged deficiencies prior to mediation.
…
16.3    If the Dispute is not fully resolved by mediation, the Dispute shall be submitted to binding arbitration … .[10]

Similarly, the Earlstone and Glengarry Agreements provides that "any dispute … shall first be submitted to mediation and, if not settled during mediation, shall thereafter be submitted to binding arbitration … and not by or in a court of law."[11]

As set forth above, all three agreements governing the homeowners at issue here clearly provide that any dispute within the scope of the agreements shall be resolved pursuant to the procedures set forth therein, and not in a court of law or equity.[12]

**B.    THE YELLOW BRASS CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENTS**

On June 30, 2011, the HOA, acting on behalf of its homeowner-members pursuant to NRS 116.3102, forwarded substantively identical pre-litigation Notices of Construction Defects to Greystone and U.S. Home pursuant to NRS 40.645 ("Notices").[13]   The Notices allege that Greystone and U.S. Home installed defective high-zinc content, Wirsbo brand "yellow brass"

---

[9] Exhibit "A" to the Affidavit of Heather R. Thompson at ¶¶ 1 through 5.

[10] Exhibit "B" to the Affidavit of Heather R. Thompson at § 16.

[11] Exhibit "C" to the Affidavit of Heather R. Thompson at ¶18.

[12] *See*,  Exhibit "A" to the Affidavit of Heather R. Thompson at ¶2, *see also*, Exhibit B to the Affidavit of Heather R. Thompson at ¶ 16.1.

[13] *See*, June 30, 2011 Notice addressed to Greystone Nevada, LLC, attached hereto as Exhibit "3," and June 30, 2011 Notice addressed to U.S. Home Corporation, attached hereto as Exhibit "4."

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

plumbing fittings and components in the HOA's members' homes.[14]   The Notices state that

> "[t]he subject defect is the high zinc brass (brass alloys containing more than 15% zinc) potable water plumbing system components, including but not limited to Wirsbo/Uponor and Vanguard/Viega brand or equivalent fittings, Red-White valves, Grundfos recirculation pumps and other high zinc brass components from any manufacturer, installed by or on behalf of [Lennar] … within each of the Association Claimant members' homes."[15]

The Notices further allege that " [t]he high zinc brass plumbing system components, when exposed to Las Vegas Valley, NV water are corroding due to a well-known, undisputable, intensely documented and studied corrosion process called dezincification."[16]

The yellow brass allegations set forth within the HOA's Notices fall squarely within the scope of all three versions of the arbitration agreements governing the construction of the homes within the Clermont, Earlstone and Glengarry Communities, and disputes arising therefrom.  The agreements govern all "Disputes" as defined therein.  Clermont Agreement 1 defines "Disputes" subject to its provisions as:

> any claim, dispute or disagreement of any nature whatsoever regarding the *Home[17]*, including, without limitation any dispute of any nature whatsoever, arising from, under, or connected in any way with, the construction or performance of the *Home* (including patent and/or latent deficiencies), the Warranty, *Greystone's* sale of the *Home*, the performance of *Greystone's* obligation in connection with the *Home*, or any services provided by *Greystone*. … [T]he term "*Dispute*" also includes any claim, right, cause of action (whether at law or equity) of any nature whatsoever and for any relief whatsoever, including without limitation, those for real or personal property damage, bodily injury or wrongful death, non-disclosure, fraud, monetary damages, rescission, and/or specific performance.[18]

Clermont Agreement 2 defines "Disputes," as follows:

> 'Disputes' (whether contract, warranty, tort, statutory or otherwise), shall include, but are not limited to, any and all controversies, disputes or claims (1) arising

---

[14] *See, Id.*  The Notices further allege that they were sent on behalf of "all similarly situated homeowners associations in the Las Vegas Valley, and/on behalf of their members;" however the scope of the Notices in this regard is improper under NRS 40.6452.

[15] Exhibits "3" and "4" at p. 3.

[16] *Id.*

[17] "*Home*" is defined to as including, but not limited to "the real property, improvements, fixtures and landscaping located at the … address."  Exhibit "A" to the Affidavit of Heather R. Thompson at ¶ A.

[18] Exhibit "A" to the Affidavit of Heather R. Thompson at ¶ 2.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

under, or related to this Agreement, the Property, the Community or any dealings between Buyer and Seller; (2) arising by virtue of any representations, promises or warranties alleged to have been made by Seller or Seller's representative; and (3) relating to personal injury or property damage alleged to have been  sustained by Buyer, Buyer's children or other occupants of the Property, or in the Community.[19]

Similarly, the Earlstone and Glengarry Agreements state that:

the parties to this Agreement specifically agree that … any dispute (whether contract, warranty, tort, statutory or otherwise), including but not limited to, (a) any and all controversies, disputes or claims arising under, or related to, this Agreement, the property, or any dealings between the Buyer and Seller …; (b)any controversy, dispute or claim arising by virtue of any representations, promises or warranties alleged to have been made by Seller or Seller's representative; and (c) any personal injury or property damage alleged to have been sustained by Buyer on the property or in the subdivision shall … be submitted to binding arbitration … and not by or in a court of law.[20]

The yellow brass claims asserted by the HOA on behalf of its member-homeowners within the Clermont, Earlstone and Glengarry Communities are clearly disputes "arising from, under, or connected in any way with, the construction or performance of the Home[s]" and are further "related to … the Property."

### C.   THROUGH THEIR REPRESENTATIVE HOA, THE HOMEOWNERS HAVE REFUSED TO COMPLY WITH THE ARBITRATION AGREEMENTS AND THE HOA CONTINUES TO VIOLATE THEIR TERMS.

Because the HOA is purporting to represent the Clermont, Earlstone and Glengarry homeowners with regard to their yellow brass claims pursuant to NRS 116.3102 and because the HOA is represented by counsel in regards to this matter, Lennar demanded that the homeowners arbitrate their disputes pursuant to the terms of the arbitration agreements by way of communication with the HOA's counsel.

In response to the HOA's Notices, counsel for Lennar forwarded two letters to the HOA's counsel dated August 17, 2011, objecting to the scope of the HOA's NRS 40 Notices and

---

[19] Exhibit "B" to the Affidavit of Heather R. Thompson at ¶16.1.

[20] *See*, Exhibit "C" to the Affidavit of Heather R. Thompson at ¶18.

requesting access to the implicated homes pursuant to NRS 40.[21]  These letters further informed counsel for the HOA that the allegations within the HOA's Notices fall within the scope of arbitration agreements entered into between Lennar and the HOA's homeowner-members.

In response, counsel for the HOA forwarded two letters to counsel for Lennar dated August 26, 2011, protesting Lennar's objections to the scope of the HOA's Notices and stating as follows: "Based on your clients' disputed response to the claimant's NRS Chapter 40 Notice, please let us know if you are authorized to accept service of a legal action on behalf of your clients to resolve this matter and have this claim resolved on the merits and in a manner that preserves our clients speedy access to justice without unreasonable waste of time or resources."[22]

Lennar then forwarded two letters to the HOA's counsel on September 2, 2011, demanding that the individual homeowners, whom the HOA purports to represent, arbitrate the yellow brass claims pursuant to the arbitration agreements.[23]  Lennar concurrently filed this action for declaratory relief and to enforce the arbitration agreements pursuant to the Federal Arbitration Act, 9 U.S.C.A. § 4.  Neither the individual homeowners nor the HOA have responded to Lennar's demands to arbitrate the yellow brass claims nor have they provided Lennar with access to inspect the homes pursuant to NRS 40.  Thus, the Clermont, Earlstone and Glengarry homeowners, through their representative HOA, have refused to arbitrate, and the HOA continues to pursue its homeowner-members' yellow brass claims on their behalves in clear violation of the terms of the arbitration agreements.

/ / /

/ / /

/ / /

---

[21] *See*, August 17, 2011 Letter from Payne & Fears on behalf of Greystone to James D. Carraway and August 17, 2011 Letter from Payne & Fears on behalf of U.S. Home to James D. Carraway, attached hereto as Exhibits "5" and "6," respectively.

[22] *See*, August 26, 2011 Letters from Terry Riedy to Sarah Bean regarding the HOA's Greystone Notice and U.S. Home Notice, attached hereto as Exhibits "7" and "8," respectively.

[23] *See*, Letter from Payne & Fears, LLP on behalf of Greystone to Terry Riedy dated September 2, 2011 and Letter from Payne & Fears on behalf of U.S. Home to Terry Riedy dated September 2, 2011, attached hereto as Exhibits "9" and "10," respectively.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

# III. <u>ARGUMENT</u>

## A.    THE FAA MANDATES ENFORCEMENT OF THE ARBITRATION AGREEMENTS.

### 1.    The FAA Favors Liberal Enforcement of Arbitration Agreements.

The Federal Arbitration Act, 9 U.S.C.A. §§ 1, *et seq.* ("FAA") represents a "liberal federal policy favoring arbitration." *AT&T Mobility, LLC v. Concepcion*, 560 U.S. ---, 131 S.Ct. 1740 (2011).  "Congress's clear intent, in [enacting] the Arbitration Act, [was] to move the parties to an arbitral dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 940 (1983). Section 4 of the FAA "call[s] for an expeditious and summary hearing, with only restricted inquiry into factual issues." *Id.*  "Moreover, the policy of the Arbitration Act requires a liberal reading of arbitration agreements.  … As a result, some issues that might be thought relevant to arbitrability are themselves arbitrable – further speeding the procedure." *Id.* at 23, fn. 27, 103 S.Ct. at 941. Further, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25, 103 S.Ct. at 941.

### 2.    Lennar Has Satisfied the Prerequisites for Enforcement of the Arbitration Agreements under the FAA.

The FAA governs arbitration agreements in transactions involving interstate commerce. Section 4 of the FAA allows a party "aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration," to petition a federal court, which would otherwise have jurisdiction over the subject matter of the controversy, for an order directing that the arbitration proceed in the manner set forth within the agreement.  Section 4 provides that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." [Emphasis added].  Thus under section 4 of the FAA, the court shall make an ordering compelling arbitration when the following factors

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

PAYNE & FEARS LLP

ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

are met: (1) the underlying transaction involves interstate commerce; (2) there exists a written arbitration agreement; and  (3) a party has failed, neglected or refused to arbitrate.

All three prerequisites for enforcement of the arbitration agreements under the FAA are satisfied.   First, the construction and sale of the homes within the Clermont, Earlstone and Glengarry Communities clearly involve interstate commerce.  The FAA applies to transactions involving economic activity that, in the aggregate, represent a general practice subject to federal control that bears on interstate commerce in a substantial way.  *See, Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003).  Here, the development and construction of the homes represents a practice that bears on interstate commerce in a substantial way.  Greystone and U.S. Home, both Delaware entities acted as the general contractor and many of the materials used to construct the residences, including the allegedly defective yellow brass plumbing components, were manufactured by out-of-state companies.  Consequently, the FAA governs the enforcement of the arbitration agreements and preempts any state law or rule that conflicts with the FAA or stands as an obstacle to its purpose.  *Preston v. Ferrer*, 552 U.S. 346, 357-8,  128 S.Ct. 978 (2008).

Second, written arbitration agreements encompassing the yellow brass claims were entered into by each of the homeowners within the Clermont, Earlstone and Glengarry Communities whom Lennar seeks to compel to arbitration.  Due to the voluminous nature of the agreements for each of the homes, which total over 1,000 pages, pursuant to Fed. R. Evid. 1006,[24] Lennar has attached as Exhibits "D," "E," and "F" to the Affidavit of Heather R. Thompson, submitted herewith as Exhibit "2," charts summarizing the names and addresses of the homeowners within the Clermont, Earlstone and Glengarry Communities, respectively, who entered into arbitration agreements with Lennar and whom Lennar seeks to compel to arbitration.  Attached to the Affidavit as Exhibits "A" and "B" are exemplars of Clermont Agreement 1 and Clermont Agreement 2, which are identical to the agreements signed by the Clermont homeowners listed in

---

[24] Fed. R. Evid. 1006 states that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court."

Exhibit "D."  Exhibit "D," further sets forth whether each homeowner listed therein signed an agreement identical to Clermont Agreement 1 or 2.  Attached to the Affidavit as Exhibit "C" is an exemplar of the Earlstone and Glengarry Agreement, which is identical to the arbitration agreement that each and every homeowner listed in Exhibits "E" and "F" signed.  As set forth within her Affidavit submitted herewith, Heather Thompson, a Senior Customer Service Representative for Lennar reviewed each and every arbitration agreement signed by the homeowners listed in the charts attached to the Affidavit as Exhibits "D," "E" and "F," and has confirmed the information set forth therein.  Also, pursuant to Fed. R. Evid. 1006, copies of each of the subject arbitration agreements are available to counsel for the HOA and the Court for examination and copying.  Thus, Lennar has met its burden under the FAA of showing that each homeowner whom Lennar seeks to compel to arbitration signed a written arbitration agreement with Greystone or U.S. Home.

Finally, Lennar has demanded that the homeowners within the Clermont, Earlstone and Glengarry communities, whom the HOA represents, arbitrate their yellow brass claims pursuant to the agreements.[25]  The homeowners and the HOA have, nonetheless, chosen to ignore the terms of the arbitration agreements, and the HOA continues to pursue the yellow brass claims on behalf of the Clermont, Earlstone and Glengarry homeowners in clear violation of the terms of the arbitration agreements.  Thus under section 4 of the FAA, all criteria necessary for an order compelling arbitration are satisfied.

As will be discussed in detail below, (1) the homeowners cannot bypass their obligation to individually arbitrate their yellow brass fitting claims through the HOA's representation of them, (2) the agreements' prohibitions on class or multi-party arbitration are legitimate and enforceable under the FAA and recent United States Supreme Court rulings, and (3) no state law grounds exist to invalidate the arbitration agreements.  As such, Lennar's petition to compel arbitration should be granted under the FAA.

---

[25] *See*, Letters from Payne & Fears, LLP to Terry Riedy dated September 2, 2011, attached hereto as Exhibits "7" and "8."

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

### B.   THE HOMEOWNERS MUST PARTICIPATE IN INDIVIDUAL ARBITRATIONS HELD PURSUANT TO THE AGREEMENTS.

#### 1.   Homeowners Cannot Bypass the Arbitration Agreements by Allowing the HOA to pursue Claims on Their Behalf.

As set forth within the HOA's Notice, the HOA is attempting to pursue the yellow brass claims in a representative capacity, under NRS 116.3102(1)(d), on behalf of all of its members – which include the homeowners within the Clermont, Earlstone and Glengarry Communities.[26] The HOA has no ownership interest in its members' homes, which are the subject of the yellow brass claims, and would not otherwise have standing to pursue the claims.[27] *See, D.R. Horton, Inc. v. Eighth Judicial Dist. Court*, 215 P.3d 697, 701 (Nev. 2009)("*First Light II*")("We recognize that in the absence of an express statutory grant, an association does not have standing to bring suit on behalf of its member owners.")

It is a generally accepted tenant of the law that a nonsignator is bound by the terms of an arbitration agreement where the nonsignator's claims are asserted solely on behalf of a signator to the arbitration agreement. *See, e.g.*, *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1380-82 (9th Cir. 1997)(requiring claims of California insurance commissioner, asserted as a trustee on behalf of insolvent reinsureds to recover insurance proceeds, to be arbitrated where reinsurance agreements contained arbitration clauses). Because the HOA's claims at issue here are being asserted on behalf of the homeowners and involve property in which the HOA has no ownership interest, the Clermont, Earlstone and Glengarry homeowners cannot be permitted to bypass the arbitration agreements by simply allowing the HOA to pursue the yellow brass claims on their behalf. Any outcome to the contrary would defy logic and would be void of any sound legal basis.

#### 2.   There Can Be No Multi-Party, Consolidated or Class Mediations or Arbitrations Under the Agreements.

All three versions of the arbitration agreements governing the homes in the Clermont, Earlstone and Glengarry Communities specifically limit the parties who may participate in the

---

[26] *See*, the HOA's June 30, 2011 Notices, attached hereto as Exhibits "3" and "4."

[27] Lennar hereby reserves any and all objections regarding the HOA's ability to pursue the yellow brass claims under NRS 116.3102 and *D.R. Horton, Inc. v. Eighth Judicial Dist. Court*, 215 P.3d 697 (Nev. 2009).

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

arbitration.  Clermont Agreement 1 provides that "[u]nless prior written consent of *Homeowner* and *Greystone* is obtained, the parties to the arbitration shall be limited to *Homeowner*  and *Greystone* … ."[28]  Clermont Agreement 2 provides that "Buyer and Seller further agree … that Seller may, at its sole election, include Seller's contractors, subcontractors and suppliers, as well as any warranty company and insurer as parties to the mediation and arbitration; and  that the mediation and arbitration will be limited to the parties specified herein."[29]  Finally, the Earlstone and Glengarry Agreements provide that "the mediation and arbitration will be limited to disputes involving the parties specified herein … ."[30]  Thus, pursuant to the clear and unambiguous terms of the arbitration agreements, the arbitrations must be conducted on an individual basis, cannot involve the claims of more than one homeowner, cannot be consolidated, and cannot go forward on any sort of a class action or multi-party basis.

Section 4 of the FAA provides that a party may petition a federal district court for an order directing that arbitration proceed "in the manner provided for in such agreement."  Here, the agreements specifically limit the parties who may participate in the arbitrations, and, thus, it is proper for this Court to issue an order compelling arbitration on an individual basis.

### i.      Class and/or Representative Arbitration Waivers are Enforceable.

Provisions limiting the parties who may participate in an arbitration, such as the provisions within the agreements at issue here, are valid and enforceable under the FAA.  The Supreme Court of the United States recently addressed the issue of class-wide, multi-party arbitrations in *Stolt-Neilsen S.A., et al. v. Animalfeeds International Corp*, 559 U.S. ---, 130 S.Ct. 1758 (2010).  In *Stolt Neilsen*, the court held that an arbitration panel violated the FAA and exceeded its authority by compelling parties to submit their claims to class arbitration when the relevant arbitration agreement was "silent" on the issue of class arbitration.  130 S.Ct. at 1775.  The *Stolt-Neilsen* Court reasoned:

---

[28] Exhibit "A" to the Affidavit of Heather R. Thompson at ¶ 5.

[29] Exhibit "B" to the Affidavit of Heather R. Thompson at ¶ 16.4.

[30] Exhibit "C" to the Affidavit of Heather R. Thompson at ¶18.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

changes brought about by the shift from bilateral arbitration to class-action arbitration are fundamental.  This is obvious as a structural matter: Classwide arbitration includes absent parties, necessitating additional and different procedures and involving higher stakes.  Confidentiality becomes more difficult.  And while it is theoretically possible to select an arbitrator with some expertise relevant to the class-certification question, arbitrators are not generally knowledgeable in the often-dominant procedural aspects of certification, such as the protection of absent parties. … [Further], the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration – its informality – and makes the process slower, more costly, and more likely to generate procedural morass than final judgment.

*AT&T Mobility, LLC v. Concepcion, et al*, 563 U.S. ---, 131 S.Ct. 1740, 1750-51, 179 L.Ed.2 742 (2011) citing *Stolt – Nielsen*, 130 S.Ct. at 1773-1776.

The U.S. Supreme Court again reaffirmed its ruling that class action waivers in arbitrations are enforceable in *AT&T Mobility, LLC v. Concepcion, et al*, 563 U.S. ---, 131 S.Ct. 1740, 1750-51, 179 L.Ed.2 742 (2011).  In *AT&T*, the court noted that,

Arbitration is poorly suited to the higher stakes of class litigation.  In litigation, a defendant may appeal a certification decision on an interlocutory basis, and if unsuccessful, may appeal from a final judgment as well.  … We find it hard to believe that defendants would bet the company with no effective means of review, and even harder to believe that Congress would have intended to allow state courts to enforce such a decision.

131 S.Ct. at 1752.

Unlike the agreements at issue in *Stolt-Nielsen*, here, the arbitration agreements at issue  here explicitly address the issue of class action or other representative procedures, and clearly prohibit them.  Such limitations are clearly enforceable under the FAA.

### ii. The Nevada Supreme Court's Decision in *Picardi*  is Preempted by the FAA.

Counsel for Lennar recognizes that the Nevada Supreme Court recently held that "a clause in a contract that prohibits a consumer from pursuing claims through a class action, whether in court or through arbitration, violates Nevada public policy … and is therefore unenforceable." *Picardi v. Eighth Judicial District Court*, 127 Nev. ---, 251 P.3d 723 (2011).  However, this decision is directly contrary to the recent rulings by the United States Supreme Court and the FAA and is thus preempted thereby.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

1    The United States Supreme Court has recently held that the FAA preempts any state court

2    decision holding that class arbitration waivers in consumer contracts are unconscionable.   The

3    Supreme Court ruled that, to the contrary, such waivers are reasonable and enforceable.   *See*,

4    *AT&T Mobility, LLC v. Concepcion, et al*, 563 U.S. ---, 131 S.Ct. 1740, 179 L.Ed.2 742 (2011).

5    In *Concepcion*, the Supreme Court ruled that the FAA preempted a ruling by the California

6    Supreme Court in *Discover Bank v. Superior Court*, 36 Cal.4th 148, 113 P.3d 1100 (2005), that was

7    similar to the ruling in *Picardi*, *i.e.*, that arbitration waivers in consumer contracts were

8    unconscionable and thus unenforceable.   131 S.Ct. at 1740.   The arbitration agreement considered

9    by the *Concepcion* Court was a consumer contract of adhesion between the Concepcions and AT&T

10   Mobility, LLC ("AT&T") for the sale and servicing of cellular telephones.   *Concepcion*, 131 S.Ct. at

11   1744.   The contracts provided for arbitration of all disputes between the parties and required that all

12   claims be brought in the parties' "individual capacity, and not as a plaintiff or class member in any

13   purported class or representative proceeding."   *Id.*   The Concepcions filed a complaint against

14   AT&T in the federal district court for the Southern District of California, which was later

15   consolidated with a putative class action alleging that AT&T had engaged in false advertising and

16   fraud by charging sales tax on phones advertised as free.   *Id.*   AT&T moved to compel arbitraion

17   under the terms of its contract with the Concepcions, and the Concepcions opposed the motion

18   contending that the arbitration agreement was   unconscionable under California law because it

19   disallowed classwide procedures.   *Id.* at 1745.   The district court denied AT&T's motion relying

20   upon the California Supreme Court's *Discover Bank* decision, concluding that the arbitration

21   provision was unconscionable.   *Id.*   The United States Court of Appeals for the Ninth Circuit

22   affirmed the district court's ruling, finding that California's *Discover Bank* rule was not preempted

23   by the FAA because the rule was simply "a refinement of the unconscionability analysis applicable

24   to all contracts generally in California."   *Id.*

25   The U.S. Supreme Court granted certiorari, reversed and remanded the Ninth Circuit's

26   ruling, and concluded that § 2 of the FAA, which provides arbitration agreements shall be "valid,

27   irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

28   of any contract," preempted California's judicially imposed rule (the "*Discover Bank* rule")

classifying collective-arbitration waivers in consumer contracts as unconscionable. The *Concepcion* Court noted that "[a]lthough §2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." 131 S.Ct. at 1748.

> The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.

*Id.*

Nevada's judicial rule, as articulated by the *Picardi* decision, holding class action waivers in arbitration agreements to be unconscionable and thus unenforceable is virtually identical to California's *Discover Bank* rule. Just like the *Discover Bank* rule, Nevada's rule also "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" and is thus also preempted by the FAA. *Id.* at 1753.

### iii.    The HOA Cannot Represent the Homeowners in any Arbitration under NRS 116.3102

The HOA may not be involved in the individual arbitrations between Lennar and the Clermont, Earlstone or Glengarry homeowners because the statutory basis through which the HOA initiated the NRS 40 procedures against Lennar only authorizes the HOA to do so when acting on behalf of the owners of two or more units. More specifically, NRS 116.3102(1)(d) allows a homeowners' association to "[i]nstitute, defend or intervene in litigation or administrative proceedings in its own name on behalf of itself *or two or more units' owners* on matters affecting the common-interest community." Furthermore, the Nevada Supreme Court in *D.R. Horton v. Eighth Judicial Dist. Court*, 215 P.3d 697 (Nev. 2009)("*First Light II*") held that NRS 116.3102(1)(d) allows a homeowners' association to file a construction defect action in representative capacity, on behalf of two or more of its members, if the action meets the class action requirements of Rule 23.   215 P.3d at 702-703. The court in *First Light II* held that an HOA pursuing homeowners' claims under NRS 116.3102(1)(d), "functions much like a plaintiff in a class action," and thus required that an action first meet the requirements of Rule 23 before an

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

1   HOA is permitted to act.  *First Light II*, 215 P.3d at 703.  However, as set forth above, the

2   arbitration agreements clearly and unambiguously limit the parties in the individual arbitrations to

3   Lennar and the subject homeowner, thereby prohibiting consolidation of claims.  Accordingly, the

4   HOA has no statutory basis for representing the homeowners in the individual arbitrations.

5       In summary, although NRS 116.3102(1)(d) may have served as a proper basis for the HOA

6   to initiate the NRS 40 process against Lennar in a representative capacity on behalf of its

7   members[31] with regard to the yellow brass claims, the HOA may not insert itself into the

8   individual arbitrations related to those claims.  To do so would violate the clear terms of the

9   arbitration agreements and the FAA.

10      **C.      NO STATE LAW GROUNDS EXIST TO VOID THE ARBITRATION
                  AGREEMENTS**.

11

12      Section 2 of the FAA provides that a written agreement to arbitrate a controversy "shall be

13  valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

14  revocation of any contract."  As discussed above, the United States Supreme Court has recently

15  held, *inter alia*, that state rules, whether judicial or legislative, that stand as an obstacle to the

16  accomplishment and execution of the full purposes and objectives of Congress in enacting the FAA,

17  are preempted by thereby. 131 S.Ct. at 1740.  The Court in *Concepcion* specifically ruled that the

18  purpose of §2's savings clause is not to "enable the court to effect what the state legislature cannot."

19  *Concepcion*, 131 S.Ct. at 1747.

20      The Nevada Supreme Court has issued a handful of published opinions which have held

21  certain arbitration agreements within consumer contracts to be unconscionable.  These state-court

22  decisions are distinguishable and do not render the the arbitration agreements at issue here

23  unconscionable.  Furthermore, to the extent that these opinions disfavor consumer arbitration

24  agreements, they clearly stand as an obstacle to the accomplishment of the FAA's objectives and are

25  therefore preempted by the FAA.

26

27

28

---

[31] Lennar hereby preserves any and all arguments regarding the ability of the HOA to pursue the yellow brass claims on behalf of its member homeowners.

**1.    The Arbitration Agreements Are Not Unconscionable under Nevada State Law.**

Within the context of consumer real estate construction and purchase agreements, the Nevada Supreme Court has issued a number of published opinions finding arbitration provisions unconscionable for various reasons, which are not applicable to the agreements at issue here.  In *D.R. Horton .v Green*, 120 Nev. 549, 96 P.3d 1159 (2004), the court found that an arbitration agreement within a home purchase agreement was unconscionable because it was purportedly "difficult to read[,] … the arbitration clause was on the back page … [while] the signature lines, in contrast, were on the front page[, and] … nothing drew attention to the arbitration provisions." Further, the court in *Green* found that the agreement was unconscionable because it failed to notify the homeowners that they were waiving their rights to fees and costs under NRS 40.655(1)(a).  120 Nev. at 556.  In another case entitled *Gonski v. District Court*, 126 Nev. ---, 245 P.3d 1164 (2010), the Nevada Supreme Court similarly held that an arbitration agreement within a consumer real estate construction and purchase agreement was unconsiconable because it was inconspicouous, and did not clearly put the purchaser on notice that they were waiving rights under NRS 40.  The court in *Gonski* stated:

> [the agreement] in no way draws the reader's attention: it is printed in normal sized font and located on page 15 of an 18-page document and in the midst of identically formatted paragraphs … .  Thus, even though the Gonskis initialed the pages on which the arbitration clause was located along with the other pages of the purchase agreement, nothing drew their attention to the importance of what those pages contained.

*Gonski*, 245 P.3d at 1167.

Setting aside the preemption by the FAA of these Nevada state court opinion disfavoring consumer arbitration agreements, discussed below, the arbitration agreements at issue here do not contain the offending provisions discussed by the Nevada Supreme Court in *Green* and *Gonski*.  Clermont Agreement 1 is a stand-alone, three-page agreement signed by the original homeowner.[32]  The agreement is separate from the purchase agreement and contains a bold and all capitalized title reading "**MEDIATION AND ARBITRATION AGREEMENT**."   Clermont

---

[32] *See*, Exhibit A to the Affidavit of Heather R. Thompson, attached hereto as Exhibit "2."

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

Agreement 1 provides that "[t]he mediator's expenses and fees shall be paid by *Greystone*" and that "*Greystone* shall post the initial fee for [the] arbitration although the arbitrator shall have the discretion to require reimbursement of the fees in connection with any award."[33]   Clermont Agreement 1 further provides that the procedures described therein "shall be the sole, exclusive and final means of resolving any *Dispute*" that "[t]he results of the arbitration shall be final, non-appealable, binding upon both parties, and may be enforced by either party," and that the "Commercial Arbitration Rules of the American Arbitration Association … shall govern the arbitration."[34]

The terms of Clermont Agreement 2 are similar.  Clermont Agreement 2 is incorporated into the purchase agreements under the bold, underlined heading "**Mediation/Arbitration of Disputes**."  Clermont Agreement 2 similarly provides that any dispute shall be submitted to mediation and arbitration per the terms of the agreement "and not by or in a court of law or equity."[35]   Clermont Agreement 2 further provides that the dispute "shall be submitted to binding arbitration and administered by the AAA."[36]

Similarly, the Earlstone and Glengarry Agreements are incorporated into the purchase agreements under the bold, capitalized heading of "**ARBITRATION OF DISPUTES**."   The Clermont and Earlstone Agreements also state that the arbitration procedures set forth therein shall be the sole recourse for resolving any dispute, defined therein "and not by or in a court of law."[37]

In an unpublished opinion entitled *KJH & RDA Investor Group, LLC*, *et al. v. District Court*, 2009 WL 1455992 (Nev. 2009),[38] the Nevada Supreme Court held that such provisions are sufficient to put parties on notice of any rights they are waiving under Nevada law.  In *KJH,* the Nevada

---

[33] *Id.* at ¶¶ 4(c), 5.

[34] *Id.* at ¶¶ 2, 5.

[35] *See,* Exhibit B to the Affidavit of Heather R. Thompson at ¶ 16.1.

[36] Exhibit B to the Affidavit of Heather R. Thompson at ¶16.3.

[37] Exhibit C to the Affidavit of Heather R. Thompson at ¶18.

[38] For the convenience of the Court, the Nevada Supreme Court's opinion in , *KJH & RDA Investor Group, LLC*, *et al. v. District Court*, 2009 WL 1455992 (Nev. 2009), is attached hereto as Exhibit "11."

Supreme Court enforced a similar arbitration agreement in a condominium purchase agreement, where the purchaser was an investment company. The Court stated:

> Although the clauses were located under the '*MISCELLANEOUS*' heading on page nine of a twelve-page purchase agreement, they were set off in their own underlined sub-headings labeled '*Arbitration*' and were in the same size type as the surrounding provisions. Thus while not exactly highlighted, neither were the clauses attempting to escape notice … Not only were the clauses not inconspicuous, the record more than reasonably suggests that the clauses were read and presumeably understood, as the purchase agreements were signed and each individual page of the agreements – including the page containing the arbitration clause – was initiated by hand.

*KJH*, at p.3. Furthermore, the Court went on to state as follows:

> KJH claims that it lacked notice of the rights it was forfeiting under Nevada law, in particular the right to a jury trial, because those rights were not individually indentified in the arbitration clauses. Nevertheless, [the seller] had no duty to apprise KJH in detail of every right that it was waiving. Moverover, by virtue of providing that arbitration would 'be the exclusive means for resolving disputes which the parties cannot resolve,' and 'shall be conducted under the … [r]ules of the [AAA]' before an arbitrator whose award 'shall be final,' the arbitration clauses adequately notified KJH that it was waiving certain important rights, including the right to have its claism tried before a jury.

*KJH* at p3, fn. 3 (internal citations omitted).

In short, there are no valid reason to conclude that the arbitration agreements at issue here are not enforceable.

### 2. To The Extent That Nevada's Published Opinions Disfavor Consumer Arbitration Agreements, They are in Conflict with the FAA.

To the extent that the *Green, Gonski,* and *KJH* opinions can be read to require a higher level of structiny with regard to arbitration agreements for "ordinary" consumers than investors, this is unwarranted and contrary to the FAA. In other words, it is inappropriate for courts to render an arbitration agreement in the consumer setting as unconscionable which would otherwise be enforceable in the investment setting.

The United States Supreme Court in *Concepcion* noted that "the times in which consumer contracts were anything other than adhesive are long past." 131 S.Ct. at 1750. Although the *Concepcion* court specifically addressed California's *Discover Bank* rule, which held that class action waivers in consumer adhesive arbitration agreements were unconscionable, the court also

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

noted other examples where state courts abuse §2's savings clause and adopt "unconscionability" rules that are in conflict with the FAA:

> An obvious illustration of this point would be a case finding unconscionable or unenforceable as against public policy consumer arbitration agreements that fail to provide for judicially monitored discovery.  The rationalizations for such a holding are neither difficult to image nor different in kind from those articulated in *Discover Bank*.  A court might reason that no consumer would knowingly waive his right to full discovery, as this would enable companies to hide their wrongdoing.  Or the court might simply say that such agreements are exculpatory – restricting discovery would be of greater benefit to the company than the consumer, since the former is more likely to be sued than sue.  And, the reasoning would continue, because such a rule applies the general principle of unconscionability or public policy disapproval of exculpatory agreements, it is applicable to 'any' contract and thus preserved by § 2 of the FAA.  In practice, of course, the rule would have a disproportionate impact on arbitration agreements; but it would presumably apply to contracts purporting to restrict discovery in litigation as well.

> Other examples are easy to imagine.  The same argument might apply to a rule classifying as unconscionable arbitration agreements that fail to abide by the Federal Rules of Evidence, or that disallow an ultimate disposition by a jury (perhaps termed 'a panel of twelve lay arbitrators' to help avoid preemption).  Such examples are not fanciful, since the judicial hostility towards arbitration that prompted the FAA had manifested itself in 'a great variety' of 'devices and formulas' declarating arbitration against public policy.

131 S.Ct. at 1747. [Internal citations omitted].   Thus, the FAA prohibits the type of "unconscionability" analysis that the Nevada Supreme Court has arguably adopted in the *Green* and *Gonski* decisions and other published opinions refusing to enforce consumer arbitration agreements.

As such, to the extent that the Nevada Supreme Court has adopted rules regarding the purported unconscionability of consumer arbitration agreements, which are supposedly applicable to "any" contract, yet frustrate the purpose of the FAA, such rules should be preempted by the FAA.

In short, the arbitration agreements are clear and unambiguous and should be enforced pursuant to their terms and the policies set forth by the FAA.

## IV. CONCLUSION

For all of the foregoing reasons, Greystone and U.S. Home respectfully request that this Honorable Court issue an order compelling the original homeowners-members of the HOA within the Clermont, Earlstone and Glengarry Communities, who are the subject of this Motion, to

arbitrate their yellow brass claims pursuant to the terms of the arbitration agreements and the Federal Arbitration Act.


DATED:  October 20, 2011                    PAYNE & FEARS LLP


                                            By: /s/ Gregory H. King
                                               GREGORY H. KING, NV Bar No. 7777
                                               SARAH J. ODIA, NV Bar No. 11053
                                               7251 W. Lake Mead Blvd., Suite 525
                                               Las Vegas, NV 89128
                                               Telephone: (702) 382-3574

                                               Attorneys for Plaintiffs
                                               GREYSTONE NEVADA, LLC and U.S. HOME
                                               CORPORATION

4825-8280-3980.1

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574