Gregory H. King, NV Bar No. 7777
ghk@paynefears.com
Sarah J. Odia, NV Bar No. 11053
sjb@paynefears.com
PAYNE & FEARS LLP
Attorneys at Law
7251 W. Lake Mead Blvd., Suite 525
Las Vegas, NV 89128
Telephone: (702) 382-3574
Facsimile: (702) 382-3834

Attorneys for Plaintiffs
GREYSTONE NEVADA, LLC and
U.S. HOME CORPORATION

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| GREYSTONE NEVADA, LLC, an Delaware limited liability company and U.S. HOME CORPORATION, a Delaware Corporation,<br><br>        Plaintiffs,<br><br>      vs.<br><br>ANTHEM HIGHLANDS COMMUNITY ASSOCIATION, a Nevada non-profit corporation; and DOE HOMEOWNER ASSOCIATIONS 1-100; and DOE HOMEOWNERS 101-5000, inclusive,<br><br>        Defendants. | CASE NO.:    2:11-cv-1424-RCJ-CWH<br><br>**GREYSTONE NEVADA, LLC AND U.S. HOME CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION** |

COME NOW, GREYSTONE NEVADA, LLC and U.S. HOME CORPORATION , by and through their counsel of record PAYNE & FEARS, LLP, and hereby submit this Reply in support of their Motion (#7) petitioning this Honorable Court for an order compelling certain homeowner-members of Defendant, the ANTHEM HIGHLANDS COMMUNITY ASSOCIATION to arbitrate the disputes which are the subject of this action, pursuant to the governing arbitration agreements entered into between Plaintiffs and Defendant's homeowner-members, whom Defendant purports to represent, and pursuant to the Federal Arbitration Act 9 U.S.C. §§ 1, *et seq.*

This Reply is made and based upon the Points and Authorities filed concurrently herewith, all pleadings and papers on file herein, and such oral argument as may be heard.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

1    DATED:  November 14, 2011          PAYNE & FEARS LLP

2

3                                          By:/s/ Gregory H. King
                                              GREGORY H. KING, NV Bar No. 7777
4                                             SARAH J. ODIA, NV Bar No. 11053
                                              7251 W. Lake Mead Blvd., Suite 525
5                                             Las Vegas, NV 89128
                                              Telephone: (702) 382-3574
6
                                              Attorneys for Plaintiffs
7                                             GREYSTONE NEVADA, LLC and U.S. HOME
                                              CORPORATION
8

9                    **MEMORANDUM OF POINTS AND AUTHORITIES**

10                            **I. INTRODUCTION**

11         The  most  noteworthy  aspect  of  the  ANTHEM  HIGHLAND  COMMUNITY

12   ASSOCIATION's (hereinafter "HOA") "limited" Response (#12) to GREYSTONE NEVADA

13   LLC and U.S. HOME CORPORATION's (hereinafter collectively, "Lennar") Motion to Compel

14   Arbitration (#7) is what it does NOT address.  It does not argue or suggest that Lennar has failed

15   to meet its evidentiary burden in establishing the existence of the arbitration agreements at issue in

16   Lennar's Motion.   The HOA does not argue that the terms contained in these agreements are

17   invalid, unconscionable or unenforceable in any way.   Neither does the HOA suggest that its

18   yellow brass claim falls outside the scope of these agreements.  Instead of addressing the actual

19   merits of Lennar's Motion, the HOA has unilaterally decided that these issues do not need to be

20   addressed until the merits of its Motion to Dismiss (#10) have been decided, which Motion was

21   filed eleven days after Lennar's Motion to Compel Arbitration.  However, the HOA's insistence

22   that "[t]his Court cannot hear, let alone determine, the merits of Greystone's Motion"[1] and its bold

23   assertion that "this Court must defer further briefing and hearing on the merits of Greystone's

24   Motion until … Anthem Highland's pending motion to dismiss … [has] been resolved"[2] are

25   incorrect and contrary to the law.

26         To be clear, Lennar's Motion to Compel Arbitration is a direct petition to this Court under

27
_____
28   [1] HOA's Limited Response to Lennar's Motion to Compel Arbitration (#12) at 2:14-15, 3:7-8.
     [2] *Id.* at 3:5-7.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

Section 4 of the Federal Arbitration Act ("FAA")(9 U.S.C.A. §1, *et seq.*) which must be "summarily" decided by this Court.  Lennar's Motion stands independent from the claims and allegations asserted in its Complaint.  In other words, a proper and valid complaint is not a prerequisite or condition upon which Lennar's Motion rests.  In fact, most of the issues set forth in Lennar's Complaint for declaratory and injunctive relief are separate and distinct from those raised by Lennar's Motion to Compel Arbitration.  Accordingly, the FAA requires that the "court shall proceed summarily" in determining issues of arbitrability and not wait to resolve issues raised by the HOA's separate Motion. *See*, 9 U.S.C.A. § 4.

As set forth in detail below, the limited arguments set forth in the HOA's Response to Lennar's Motion are without merit.  Accordingly, this Court is required to issue an order compelling arbitration as requested by Lennar.

## II. LEGAL ARGUMENT

A.   **LENNAR'S MOTION FOR AN ORDER COMPELLING ARBITRATION MUST BE DECIDED SUMMARILY, SEPARATE AND APART FROM LENNAR'S OTHER CLAIMS FOR RELIEF.**

In its "limited" response to Lennar's Motion to Compel Arbitration, the HOA almost completely defers to the arguments it asserts in its Motion to Dismiss Lennar's Complaint on file herein.  The HOA suggests that there is a question as to whether this Court has jurisdiction over "this action," that jurisdiction is "discretionary" and should be declined in this "Nevada-law-based declaratory relief action," and that Lennar's Complaint contains "substantial pleading errors."[3] With the exception of whether proper subject matter jurisdiction has been invoked under Title 28, discussed below, none of these arguments are relevant to Lennar's Motion to this Court pursuant to §4 of the FAA for an order compelling arbitration.  Lennar's Complaint filed in this action is separate and independent from Lennar's Motion to Compel Arbitration.  Thus any alleged "pleading errors" within the Complaint or issues regarding Lennar's separate, alternative claims for declaratory and injunctive relief are irrelevant to the instant Motion to Compel Arbitration.

Lennar's Motion to Compel Arbitration constitutes an independent petition under § 4 of the FAA, and must be considered by this Court separately from the claims within Lennar's

---

[3] *See*, *Id.* at (#12) at 3:14-23.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

Complaint and the HOA's Motion to Dismiss the same.  *See*, 9 U.S.C.A. §6 ("Any application to the court hereunder, shall be made and heard in the manner provided by law for the making and hearing of motions … .")  A petition to compel arbitration can be made independent of any underlying lawsuit.  *See*, *Countrywide Home Loans, Inc. v. Mortgage Guaranty Ins. Corp.*, 642 F.3d 849, 855, fn2 (9th Cir. 2011)("If [the defendant] … had brought directly to federal court a petition under § 4 of the FAA that was unattached to [the plaintiff's] declaratory suit, … the district court's diversity jurisdiction would allow it to consider the merits of this petition.").  Section 4 of the FAA contemplates a direct motion for an order compelling arbitration and does not require that such motion be attached to a lawsuit or any other cause of action:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action … of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. … The court *shall* hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.  [Emphasis added].

Thus, the HOA's arguments concerning the propriety of Lennar's declaratory and injunctive relief claims or the sufficiency of the pleadings within Lennar's Complaint are irrelevant to this Court's disposition of Lennar's Motion to Compel Arbitration.

Further, the FAA requires that Lennar's Motion to Compel Arbitration be "summarily" decided.  Section 4 of the FAA provides that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be at issue, *the court shall proceed summarily to the trial thereof* … [and] *shall make an order summarily directing the parties to proceed with the arbitration* in accordance with the terms thereof."  [Emphasis added].  As recognized by the U.S. Supreme Court, "Congress's clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927 (1983).  Section 4's mandate for an affirmative order to engage in arbitration "call[s] for an expeditious

and summary hearing, with only restricted inquiry into factual issues." *Id.*

Here, because the HOA has not opposed the validity or enforceability of the terms of the arbitration agreements, the Court must promptly issue an order directing the parties to arbitration once it has resolved the jurisdictional issues discussed below.

### B.   IN ITS "LIMITED" RESPONSE, THE HOA DOES NOT DISPUTE THAT LENNAR HAS MET ITS BURDEN UNDER THE FAA.

As discussed within Lennar's Motion to Compel Arbitration, § 4 of the FAA directs that an order compelling arbitration shall be entered upon a showing that (1) there exists a written arbitration agreement, and (2) the party bound by the arbitration agreement has failed, neglected or refused to arbitrate. *See*, 9 U.S.C.A. §4.  The HOA's "limited" response to Lennar's Motion to Compel Arbitration does not dispute that Lennar has met its burden under §4 of the FAA.  The HOA does not challenge the sufficiency of Lennar's production of a summary, pursuant to Fed. R. Evid. 1006, of the HOA's homeowner members who entered into arbitration agreements, or the production of true and correct exemplar agreements.  In fact, although each and every arbitration agreement which was the subject of Lennar's Motion was specifically made available to counsel for the HOA for inspection, copying or both, counsel for the HOA did not request to inspect the documents prior to filing its "limited" response.[4]

Similarly, the HOA does not challenge the fact that the HOA and its homeowner-members have failed, neglected or refused to arbitrate in response to Lennar's demand for arbitration.[5] Because neither the making of the written arbitration agreements nor the failure, neglect or refusal by the HOA and its homeowner-members to comply is at issue, an order compelling arbitration is proper under §4 of the FAA.

As is clear from Lennar's Motion, it is limited to certain homeowner-members within the Clermont, Earlstone and Glengarry subdivisions of the Anthem Highlands community who signed arbitration agreements as original homeowners and who still own the homes that are the subject of such agreements.  Lennar notes that within its Motion to Dismiss Lennar's Complaint, the HOA

[4] *See*, October 28, 2011 Letters to Terry Riedy from Payne & Fears, submitted herewith as Exhibit "1."
[5] *See*, September 2, 2011 Letters to Terry Riedy from Payne & Fears forwarded on behalf of Greystone and U.S. Home, respectively, submitted herewith as Exhibit "2" and "3."

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

attempts to manufacture some confusion regarding which of the homeowners represented by the HOA Lennar seeks to compel to arbitration.  Though this argument is not made in the HOA's "limited" Response, Lennar anticipates that the  HOA may attempt to raise a similar argument if oral argument is heard on this Motion.

There is no ambiguity.  Lennar's Motion seeks to compel the homeowners within the Clermont, Earlstone and Glengarry communities, identified in Exhibits "D," "E," and "F," to the Affidavit of Heather R. Thompson, to arbitration.  Exhibits "D," "E," and "F" to Ms. Thompson's Declaration identify the addresses of the homes within the Clermont, Earlstone and Glengarry communities for which the still current owners signed arbitration agreements with Lennar.  Each of the owners of these homes are original and current members of the HOA and are being represented in this action.  In short, each of the persons identified on Exhibits "D," "E" and "F" to Ms. Thompson's Affidavit are original and *current* homeowners of the properties at issue.

Nonetheless, in an effort to eliminate any possible confusion, Lennar has attached to this response an Affadavit of Nancy Babas, which confirms that the homeowners within the Clermont, Earlstone and Glengarry communities identified on Exhibits "D," "E," and "F," respectively, are current owners of record of the properties identified therein.  As set forth in that Affadavit, the Affiant has reviewed the public records set forth on the Clark County's Assessor website and determined that as of October 20, 2011, the date on which Lennar filed its Motion, the homeowners set forth in Exhibits "D," "E," and "F" to the Affidavit of Heather R. Thompson, owned the properties identified therein.[6]

C.   **THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE HOA's UNDERLYING CLAIM AGAINST LENNAR.**

Section 4 of the FAA states that a party may file a petition thereunder with a United States district court which, "would have jurisdiction under Title 28, in a civil action … of the subject matter of a suit arising out of the controversy between the parties."  As set forth within the HOA's NRS 40 Notices to Lennar in this matter, the notices were forwarded by "the *Anthem Highlands Community Association*, individually and in its representative capacity on behalf of its members,

---

[6] *See*, Declaration of Nancy Babas, attached hereto as Exhibit "4."

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

as well as on behalf of similarly situated homeowners associations in the Las Vegas Valley … ."[7] The Notices further state that "[t]he purpose of the Notice is to inform you [Lennar], that the Claimants hereby make a claim against you for common plumbing defects in their members' homes."[8]  Thus, per the HOA's NRS 40 Notices to Lennar, the "controversy between the parties" for purposes of determining whether this Court has subject matter jurisdiction is the HOA's claim "on behalf of its members, as well as on behalf of similarly situated homeowners associations in the Las Vegas Valley," against Lennar "for common plumbing defects in their members' homes."[9] At set forth below, this Court would clearly have subject matter jurisdiction over a "suit arising out of the controversy between the parties" under 28 U.S.C. §1332, pursuant to both diversity jurisdiction and under the Class Action Fairness Act ("CAFA") and thus this Court has jurisdiction to properly enter an order compelling arbitration under §4 of the FAA.

### 1.    Diversity Jurisdiction.

This Court has diversity jurisdiction over a suit arising out of the HOA's yellow brass claim against Lennar pursuant to 28 U.S.C. §1332 because complete diversity exists between Lennar and the HOA and the amount in controversy well exceeds $75,000.00.

### (a) Diversity of citizenship.

If a party is a corporation, it is a citizen of both its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's "principal place of business" for diversity purposes is determined by the "nerve center test." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192-93 (2010).  The "nerve center test" locates a corporation's principal place of business in the state "where the corporation's high level officers direct, control, and coordinate the corporation's activities."  *Id.* at 1186. "[I]n practice [the nerve center] should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination . . ." *Id.* at 1192.

Upon information and belief, the HOA is, and was at the time this action commenced,  a

---

[7] *See*, HOA's June 30, 2011 NRS 40 Notices forwarded to Greystone Nevada, LLC and U.S. Home Corporation, attached hereto as Exhibits "5" and "6," respectively. (citing NRS 116.3102(1)(d).
[8] *See*, HOA's June 30, 2011 Notices at p.2, ¶2.
[9] *See*, HOA's June 30, 2011 NRS 40 Notices at p.2.

1 citizen of Nevada. Submitted herewith is a true and correct copy of a print-out from the Nevada
2 Secretary of State's website, which identifies the HOA (Anthem Highlands Community
3 Association) as a Nevada non-profit corporation.[10]   The print-out also provides a Las Vegas,
4 Nevada address for the HOA's officers. The HOA does not dispute that it is a citizen of Nevada.

5 U.S. Home Corporation is organized under the laws of Delaware and its principal place of
6 business is in Miami, Florida.[11]

7 A limited liability company is a citizen of every state of which its members are citizens.
8 *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Lennar is a
9 Delaware limited liability company. Lennar's managing and only member is Lennar Pacific
10 Properties Management, Inc. ("Lennar Pacific"). Lennar Pacific is, and was at the time this action
11 was commenced, a Delaware corporation headquartered in Miami, Florida. Therefore, Lennar
12 Pacific is a citizen of Delaware and Florida, and because it is the sole member of Lennar, Lennar
13 is also a citizen of Delaware and Florida.[12]

14 In summary, U.S. Home Corporation and Greystone Nevada, LLC, as a citizens of
15 Delaware and Florida, are completely diverse from the HOA, which is a citizen of Nevada.

**(b)    Amount in controversy.**

**(i)    This matter involves two single claims.**

18 The HOA initiated the yellow brass claim by providing Lennar with two notices of
19 constructional defects pursuant to NRS 40.645.[13] The Notices provide that the Anthem Highlands
20 Community Association and all similarly situated associations whom the HOA purports to
21 represent, "hereby make a *claim* against you for common plumbing defects in their members'
22 homes."[14]  [Emphasis added].  Thus, by the plain language of the Notices, the HOA is bringing "a
23 claim" against Lennar, i.e., the yellow brass claim, and aggregation is not necessary.

[10] *See*, Nevada Secretary of State Record regarding the Anthem Highlands Community Association, attached hereto as Exhibit "8."
[11] *See*, Affidavit of Mark Sustana, Vice President and Secretary of U.S. Home Corporation, submitted herewith as Exhibit "7;."
[12] *See*, Affidavit of Mark Sustana, Vice President and Secretary of Lennar Pacific Properties Management, Inc.
[13] *See*, HOA's June 30, 2011 Notices, attached hereto as Exhibits "5" and "6."
[14] *See*, HOA's June 30, 2011 Notices at p.2, ¶2, attached hereto as Exhibits "5" and "6."

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

-8-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

**(ii)      If the Court determines this matter involves multiple claims, the claims must be aggregated because a single party is asserting claims against a single party.**

If this Court determines that the yellow brass claim is not a single claim, but instead involves multiple claims, the Court must aggregate the claims for purposes of determining the amount in controversy.  This is because the  because a single party, the HOA, has asserted two claims against two single parties, Greystone and U.S. Home.

The anti-aggregation rule does not apply in cases where a single party asserts two or more claims against another single party.  *Snyder v. Harris*, 394 U.S. 332, 335 (1969); *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1474 (9th Cir. 1997).  In *Budget Rent-A-Car*, the Ninth Circuit Court of Appeals held that the district court was required to aggregate the multiple claims at issue between single parties in order to evaluate the jurisdictional requirement.  The relevant facts in *Budget Rent-A-Car* are as follows:  Two individuals ("Drivers") rented a car from Budget and were each provided with liability coverage of $35,000 for damages arising out of "accidental harm sustained by any one person as a result of any one accident." *Id.* at 1473. The same day, Drivers went to George and Sharon Higashiguchi's residence, attempted to abduct their granddaughter, and assaulted the Higashiguchis causing them injuries.  *Id.*  Before the Higashiguiche's filed suit for damages, Budget filed a declaratory relief action against them, among others, seeking a declaration that it was not obligated to provide coverage for the Higashiguiche's injuries.  *Id.* The Higashiguchi's moved to dismiss for lack of subject matter jurisdiction, alleging that the amount in controversy did not exceed the then $50,000 requirement because each of their future claims against each driver would be for the policy limits of approximately $35,000.  *Id.* The district court granted the motion , but the Ninth Circuit reversed. The Ninth Circuit stated: "A declaratory judgment plaintiff may reach the jurisdictional amount by aggregating its multiple claims against a single defendant." *Id.* at 1474. The Court reasoned as follows:

> This is not a case in which Budget, through the vehicle of a declaratory relief action is creating federal diversity jurisdiction that otherwise would not exist.  If both Higashiguchis were to prevail against both [drivers] in their state tort claims, George and Sharon each could meet the amount in controversy requirement for

1   federal diversity jurisdiction by aggregating their two breach of contract claims
2   against Budget. *Id.* at 1474.

3   The Court concluded, therefore, that each of the Higashiguchis two $35,000 claims aggregated to
4   $70,000, and the amount in controversy requirement had been met.  *Id.*

5   Here, the HOA is a single claimant asserting two claims against a single entities,
6   Greystone and U.S. Home. As such, the claims against each of them must be aggregated in order
7   to evaluate the amount in controversy requirement. *See Budget Rent-A-Car*, 109 F.3d at 1474.  As
8   in *Budget Rent-A-Car*, Lennar is not attempting to create federal diversity jurisdiction that would
9   not otherwise exist.  If the HOA (a single party) were to prevail on its yellow brass claims against
10  Greystone and U.S. Home in a future lawsuit, the amount of the judgments in favor of the HOA
11  would far exceed $75,000, as discussed further below.

12  In *Lake Haven Mobile Home Owners, Inc. v. Orangeland Vistas, Inc.*, 2005 WL 1310010
13  (M.D. Fla.), a case directly on point, the court aggregated numerous claims brought by a mobile
14  homeowners' association on behalf of its members against the owners of a mobile home park.
15  The court aggregated the claims in order to meet the amount in controversy requirement.  The
16  association brought a state court action against the defendants, claiming that they had increased
17  each homeowner's rent by approximately $15,000 without first providing the required statutory
18  notice.  *Id.* at *1.  The defendants removed the case to federal court, and the association filed a
19  motion for remand. *Id.* The court denied the motion, ruling that the defendants had properly
20  removed the case because there was complete diversity of citizenship and the amount in
21  controversy had been met by aggregation of the defendants' claims. *Id.* The court noted that
22  Florida Rule of Civil Procedure 1.222, authorizes a mobile homeowners' association to "institute
23  maintain, settle, or appeal actions or hearings in its name on behalf of all homeowners concerning
24  matters of common interest," and concluded that "as an associational action pursuant to Fla. R.
25  Civ. P. 1.222, the Association's aggregated claims met the required amount in controversy for a
26  diversity action." *Id.* at *1.

27  As in *Lake Haven*, this Court should aggregate the HOA's claims against Greystone and
28  U.S. Home, respectively, in determining the amount in controversy.  Here the HOA is statutorily

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

-10-

authorized to bring claims on behalf of the Anthem Highlands Homeowners concerning matters of common interest. NRS 116.3102(1)(d) provides that an association may "institute, defend or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more units' owners on matters affecting the common-interest community."[15] Pursuant to this statutory authority, the HOA brought two claims against Lennar on behalf of the Anthem Highlands homeowners, and purports to bring a claim on behalf of "all similarly situated" homeowners in the Las Vegas valley pursuant to NRS 40.645(4). As such, the HOA's claims can be aggregated. *See Lake Haven* 2005 WL 1310010 at *1.

(iii)  **The amount in controversy exceeds $75,000.**

Whether the Court treats this matter as a single claim against Lennar, or aggregated claims, the amount in controversy far exceeds $75,000.

As set forth above, for purposes of §4 of the FAA, subject matter jurisdiction is determined by examining whether the court would have jurisdiction over the underlying "subject matter of a suit arising out of the controversy between the parties."  Here, by way of the yellow brass claims, Lennar understands that the HOA seeks the replacement of, or monetary compensation for the replacement of, the numerous WIRSBO yellow brass plumbing components installed in Lennar homes throughout the Las Vegas valley.

Several years ago, the HOA's counsel brought a similar civil action on behalf of homeowners seeking damages arising from yellow brass plumbing components. In *In Re Kitec Fitting Litigation*, Clark County District Court Case No. A493302, the homeowners' expert estimated that, depending on variable repair conditions, it would cost between $10,404 and $23,183, per home, to replace the yellow brass plumbing components.[16]

Here, the Clermont, Earlstone and Glengarry communities within the Anthem Highlands Master community, which are the subject of the HOA's claim,  have a total of 298 homes, 100 of which are Greystone homes (Clermont) and 198 of which are U.S. Home (Glengarry and

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

---

[15] The Nevada Supreme Court has held that a "common-interest community" for purposes of NRS 116.3102(1)(d), includes the individual homes owned by an association's members. *D.R. Horton v. Eighth Judicial Dist. Court*, 125 Nev. 449, 457, 215 P.3d 697 (2009) (hereinafter "*First Light II*").

[16] *See*, Cost of Repair Report submitted by the Class Claimants in the *In re Kitec* litigation, Clark County District Court No. A493302, attached hereto as Exhibit "9."

1   Earlstone).  Lennar believes in good faith that that the *In re Kitec* cost of repair is a good faith

2   estimate of the amount in controversy per home in this matter.  Therefore, based on the HOA's

3   counsel's own previous estimates, the amount in controversy in regards to the Lennar Anthem

4   Highlands yellow brass claim is between $3,100,392 and $6,908,534, with between $1,040,400

5   and $2,318,300. attributable to Greystone and between $2,059,992 and $4,590,234 attributable to

6   U.S. Home.  This far exceeds the $75,000 requirement.

7                    **2.      Class Action Fairness Act.**

8        Alternatively, this Court would have jurisdiction over a suit arising out of the controversy

9   between Lennar and the HOA pursuant to the Class Action Fairness ("CAFA"), 28 U.S.C.

10  §1332(d).  CAFA provides that, "[t]he district courts shall have original jurisdiction of any civil

11  action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of

12  interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a

13  State different from any defendant … ."  *See*, 28 U.S.C. §1332(d).

14       Again, § 4 of the FAA provides that a district court may hear a Motion to compel

15  arbitration under that section if the court "*would have jurisdiction* under Title 28, in a civil action

16  … of the subject matter of a suit arising out of the controversy between the parties."  [Emphasis

17  added].  Here, the "controversy between the parties" is the HOA's claim against Lennar "in its

18  representative capacity on behalf of its members, as well as on behalf of all similarly situated

19  homeowners associations in the Las Vegas Valley, and/on behalf of their members … for common

20  plumbing defects in their members' homes."[17]  The only way the HOA could pursue a suit for its

21  yellow brass claim against Lennar as it relates to "all similarly situated homeowners associations

22  in the Las Vegas Valley, and/on behalf of their members,"[18] would be through a Rule 23 class

23  action.  This Court "would have jurisdiction" under CAFA "of the subject matter of a suit arising

24  out of controversy between the parties:" the HOA's yellow brass claim.

25       The amount in controversy in a lawsuit involving the HOA's yellow brass claim against

26  Lennar, as set forth within the HOA's NRS 40 Notices, would well exceed the $5,000,000

27  _____
    [17] *See*, HOA's June 30, 2011 Notices at p.2.

28  [18] *See*, *Id*.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

PAYNE & FEARS LLP

ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

1   requisite amount to satisfy CAFA.[19]  Here, in addition to the Clermont (developed by Greystone,

2   100 homes), Earlstone (U.S. Home, 98 homes) and Glengarry (U.S. Home, 100 homes)

3   communities within the Anthem Highlands Master community, which have a total of 298 homes,

4   the HOA's counsel has made yellow brass claims in three other Lennar communities located in the

5   Las Vegas Valley: Fiesta Park, which was developed by Greystone and has 170 homes; Wolf

6   Creek, developed by U.S. Home with 68 homes and Lamplight Square, developed by Greystone

7   with 64 homes. In addition to these, U.S. Home Corporation and Greystone Nevada, LLC have

8   respectively built at least 300 additional homes in the Las Vegas valley within the past 8 years

9   where Wirsbo yellow brass components were likely installed.[20]  Admittedly, the homes involved

10  in *In Re Kitec* (which were not built by Lennar) have different floor plans from those found in

11  Lennar communities and would, therefore, present different "variable repair conditions."

12  However, Lennar believes in good faith that this would not result in a decrease in the bottom end

13  of the HOA's counsels' estimated range for the cost to replace the yellow brass components.

14  Therefore, based on the HOA's counsel's own previous estimates, the amount in controversy is at

15  least between $12,484,800 and $27,819,600 for the entire Las Vegas valley (between $6,596,136

16  and $14,698,022 for Greystone and between 5,888,664 and 13,121,578 for U.S. Home).  This far

17  exceeds the $5,000,000.00 jurisdictional requirement for CAFA.  Thus, because this court would

18  have subject matter jurisdiction "in a suit arising out of the controversy between the parties,"

19  either pursuant to diversity or CAFA, Lennar's Motion to this Court for an order compelling

20  arbitration is proper under § 4 of the FAA.

21      **D.    THE ANTHEM HIGHLANDS HOMEOWNERS ARE BOUND BY ANY
22              ORDERS BINDING THEIR STATUTORILY AUTHORIZED
                REPRESENTATIVE**

23          The HOA's Response argues that, even though the HOA is pursuing the homeowner-

24  members' underlying yellow brass claim on their behalves as their authorized representative under

25  NRS 116.3102(1)(d), this Court's rulings are not binding upon them.  The HOA's assertion that it

26  can pursue the homeowners' yellow brass claims against Lennar, but Lennar cannot assert its

27  _____
    [19] As established above, Greystone Nevada, LLC and U.S. Home Corporation are citizens of Delaware and Florida,
    thus both are citizens of states different that the plaintiff would be in a suit arising out of the HOA's claim – the HOA.
28  [20] *See*, Affidavits of Wayne Shumsker, regarding Greystone and U.S. Home attached hereto as Exhibit "10."

defenses to said claim – i.e. enforcement of the arbitration agreements – against the HOA, is completely nonsensical.

### 1. Joinder of the Homeowners is Not Required Under Fed. R. Civ. P. 17 Where Their Statutorily Authorized Representative Has Initiated Their Claim.

Joinder of the Anthem Highlands homeowners to Lennar's Motion is neither necessary nor required given that the homeowners' statutorily authorized representative, the HOA, has initiated the homeowners' yellow brass claim that is the subject of this Motion on their behalves.  Federal Rule of Civil Procedure 17, which generally requires the appearance of the real party in interest to lawsuit, lists several exceptions to this general rule: "The following may sue in their own names *without joining the person for whose benefit the action is brought*: … a party authorized by statute."  [Emphasis added].

The HOA has asserted the yellow brass claim as its member-homeowners' statutorily authorized representative under NRS 116.3102(1)(d) and thus joinder of the homeowners for whose benefit the claim has been made is not necessary.[21]  The Nevada Supreme Court in *D.R. Horton v. Eighth Judicial Dist. Court* (hereinafter "*First Light II*") recognized that "in the absence of an express statutory grant, an association does not have standing to bring suit on behalf of its member owners" under Rule of Civil Procedure 17.   125 Nev. 449, 455, 215 P.3d 697 (2009) citing Nev. R. Civ. P. 17.[22]  However, the Court in *First Light II* expressly held that "under NRS 116.3102(1)(d), a homeowners' association has standing to assert constructional defect claims in a representative capacity on behalf of [its] individual units [owners]."  125 Nev. at 453.  Thus, the homeowners are not indispensable to this action given that the underlying claim has been initiated by their representative, as authorized by NRS 116.3102(1)(d).

### 2. The Anthem Highlands Homeowners Have Allowed their Statutorily Authorized Representative, the HOA to Pursue The Yellow Brass Claim.

In Nevada, homeowners' associations have an express statutory grant of standing to pursue claims on behalf of their homeowner-members, for matters affecting the homeowners' individual

---

[21] *See*, HOA's June 30, 2011 NRS 40 Notices at p.2.

[22] Nevada's Rules of Civil Procedure are modeled after the Federal Rules and Nevada Rule 17 is substantively identical to Federal Rule 17.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

PAYNE & FEARS LLP

ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

properties, subject to the terms of the associations' CC&Rs.[23]  *Id.*  Subject to the terms of an association's Covenants, Conditions and Restrictions ("CC&Rs"), NRS 116.3102(1)(d) allows a homeowners' association to "[i]nstitute, defend or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more units' owners on matters affecting the common-interest community."  The Nevada Supreme Court has held that a "common-interest community" for purposes of NRS 116.3102(1)(d), includes the individual homes owned by an association's members.  125 Nev. at 457.

The HOA here, has invoked NRS 116.3102(1)(d) to initiate the yellow brass claim against Lennar, *on behalf of* the HOA's homeowner-members.  The HOA's NRS 40 Notices to Lennar state, "the Anthem Highlands Community Association … in its representative capacity on behalf of its members (citing NRS 116.3102) … hereby make[s] a claim against you for common defects in [its] members' homes."[24]  [Emphasis added].  Thus, because the HOA has invoked NRS 116.3102(1)(d), joinder of its homeowner-members on whose behalf the yellow brass claim is made is not necessary under Fed. R. Civ. P. 17.

The case relied upon by the HOA to support its argument that homeowners are "strangers" to this lawsuit and cannot be bound by orders of this Court is inapplicable as it deals with the narrow issue of whether an order denying class certification is binding upon non-party putative class members.  *See*, HOA's Response at 5:2-12 *quoting Smith v. Bayer*, 131 S.Ct. 2368, 2380-81 (2011).  That case is irrelevant to the situation here, where the HOA has initiated its homeowner-members' yellow brass claim in a representative capacity under NRS 116.3102(1)(d) and the HOA's CC&Rs governing the relationship between the HOA and its homeowner-members.  The Anthem Highlands homeowners are not putative class members, but rather are members of the HOA who have authorized the HOA to pursue the yellow brass claim on their behalves.

---

[23] Under *First Light II*, non-HOA-member developers, such as Lennar, cannot challenge the adequacy of the internal procedures followed by a homeowners' association  underlying the commencement of a claim.  *First Light II*, 125 Nev. at 454, 215 P.3d 697.

[24] *See*, HOA's June 30, 2011 Notices at p.2, citing NRS 116.3102.

**3.     Any Defenses Lennar Has to the Homeowners' Yellow Brass Claim, Can Be Asserted Against Their Statutory Representative, the HOA.**

Any defenses to the Anthem Highlands homeowners' yellow brass claim that Lennar has against the homeowners can be asserted against the HOA, who is making the claim on their behalf. Here, the yellow brass claim is subject to the terms of arbitration agreements entered into between Lennar and the homeowner-HOA members whom Lennar seeks to compel by way of its Motion.[25] The fact that the HOA is not a party to the arbitration agreements makes no difference where it is asserting a claim on behalf of signators.  "[A] nonsignator is bound to the terms of an arbitration agreement where the nonsignator's claims are asserted solely on behalf of a signator to an arbitration agreement."  *Satomi Owners Assoc. v. Satomi, LLC*, 167 Wash.2d 781, 810, 225 P.3d 213, 230 (2009) citing *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1380-82 (9th Cir. 1997), *see also*, *Stanford Development Corp. v. Stanford Condominium Owners Association*, 285 S.W.3d 45 (Texas App. 2009)(holding that "a condominium homeowners' association that brings suit against the condominium developer on behalf of its homeowners is bound by arbitration agreements in earnest money contracts between developer and the individual homeowners.")

The HOA's Response to Lennar's Motion seems to suggest that if the terms of the arbitration agreements do not allow for consolidated, class or joint arbitrations an order pursuant to Lennar's Motion would not be binding upon the HOA's members.  This argument is nonsensical.  The fact that the terms of the arbitration agreements do not allow for any sort of joint arbitrations does not change this Court's ability to compel the Anthem Highlands homeowners to arbitration through their statutory representative for purposes of the yellow brass claim, the HOA.

As the Anthem Highlands homeowners' statutorily authorized representative, the HOA essentially steps into the shoes of the homeowners.  *Satomi Owners Assoc. v. Satomi, LLC*, 167 Wash.2d 781, 810, 225 P.3d 213, 230 (2009).  Although the Anthem Highlands homeowners could have each individually asserted a yellow brass claim against Lennar for their respective residences, the homeowners apparently agreed to allow their HOA to pursue their claim on their

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

---

[25] *See*, Exhibits "D," "E" and "F" to Affidavit of Heather R. Thompson, attached to Lennar's Motion as Exhibit "2."

1    behalves and thus must be bound by any order flowing from this representation.[26]

2         **E.    THE HOA'S ARGUMENT THAT IT HAS NOT MADE A "CLAIM"**
          **AGAINST LENNAR IS COMPLETELY VOID OF REASON.**

3         Remarkably, the HOA's Response argues that the HOA has not made a claim against

4    Lennar.[27]   The HOA argues that "[a] 'claim' arises, if at all, only after Chapter 40 is

5    unsuccessfully exhausted and a homeowner or homeowners' association decides to file a lawsuit

6    asserting causes of action to redress the remaining construction defects."[28]   Not only is this

7    argument contrary to the clear provisions of the arbitration agreements and NRS 40.600, *et seq.*

8    ("NRS 40"), it completely defies logic and the most elementary principles of the law.

9         **1.    The HOA's NRS 40 Notice Triggers the Application of the Arbitration**
10            **Agreements.**

11        A "dispute" for purposes of triggering the terms of the arbitration agreements at issue here

12   is defined in Clermont Agreement 1 as "any claim, dispute or disagreement of any nature

13   whatsoever regarding the *Home*, including without limitation any dispute of any nature

14   whatsoever, arising from, under, or connected in any way with the construction or performance of

15   the *Home* … ."[29]   Thus, the HOA's NRS 40 Notices, stating that the HOA acting under NRS

16   116.3102(1)(d), "hereby make[s] a claim against [Lennar] for common plumbing defects in [its]

17   members' homes,"[30] fall squarely within the definition of a "dispute" triggering application of the

18   arbitration provisions of Clermont Agreement 1.

19        Clermont Agreement 2 and the Earlstone and Glengarry Agreements similarly state that

20   "disputes" triggering the arbitration provisions "(whether contract, warranty, tort, statutory or

21   otherwise), shall include … any and all controversies, disputes or claims … relating to personal

22   injury or property damage alleged to have been sustained by Buyer  … or other occupants of the

23   Property."[31]   Thus, the HOA's NRS 40 Notice claiming defects within the Anthem Highlands

---

[26] Lennar has no knowledge regarding the internal procedures which the HOA and its homeowners followed to make this determination, nor can Lennar, as a non- HOA member, challenge the adequacy of such procedures.  *See*, *First Light II*, 125 Nev. at 454, 215 P.3d 697.
[27] *See*, HOA's Response (#12) at 6:3 – 7:4.
[28] *See*, HOA's Response (#12) at 6:17-20.
[29] *See*, Exhibit "A" to the Affidavit of Heather R. Thompson, attached to Lennar's Motion to Compel as Exhibit "2."
[30] *See*, HOA's June 30, 2011 NRS 40 Notices to Lennar at p.2.
[31] *See*, Exhibit "B" and "C" to the Affidavit of Heather R. Thompson, attached to Lennar's Motion to Compel (#7) as Exhibit "2."

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

homes also triggers the application of these agreements.

 **2.** **The HOA's NRS 40 Notice Explicitly States that the HOA is Making A "Claim" Against Lennar.**

 The HOA's proclaimed ignorance of the difference between a claim – an assertion of a legal right -  and a civil lawsuit is unconvincing in light of the fact that the HOA's NRS 40 Notices specifically state that the HOA is making a "claim" against Lennar by virtue of said Notices.  The Notices states that "[t]he purpose of the Notice is to inform you that the [HOA] hereby makes[s] a claimant against you [Lennar] for common plumbing defects in [its] members' homes."[32]  The HOA's understanding of NRS 40 is further evidenced by the following statement from the HOA's NRS 40 Notice to Lennar: "NRS 40.645(2) requires that before commencing litigation against you or your company, the Claimants must provide you with written notice specifying in reasonable detail the construction defects for which you may be held liable pursuant to NRS 40.640."[33]  Thus, the HOA's argument that it has not made a "claim" against Lennar on behalf of its homeowner-members is clearly a disingenuous attempt to keep the homeowners' yellow brass claims out of arbitration.

 **3.** **The HOA's NRS 40 Notice Constitutes A Claim and Has Immediate Legal Implications to the Anthem Highlands Homeowners.**

 NRS 40 is a mandatory pre-litigation *claim*-resolution process with which a "C*laimant*" must comply before it can file a *civil lawsuit* to recover damages stemming from a construction defect.  *See*, NRS 40.645, NRS 40.647.  NRS 40.610 defines "Claimant" for purposes of NRS 40 as "[a]n owner of a residence or appurtenance, [a] representative of a homeowner's association that is responsible for a residence or appurtenance and is acting within the scope of the representative's duties pursuant to chapter 116 or 117 of NRS; or [e]ach owner of a residence or appurtenance to whom a notice applies pursuant to subsection 4 of NRS 40.645" (allowing one claimant to send one NRS 40 Notice of "similarly situated" residences within the community).  NRS 40 makes it clear that a "Claimant" acting under the authority of NRS 40, is making a construction defect "claim" against a developer.  In this regard, NRS 40.645 provides that "before

---

[32] *See*, HOA's June 30, 2011 NRS 40 Notices to Lennar at p.2.

[33] *Id.* at p.3.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

1    a *claimant* commences an action or amends a complaint to add a cause of action for a

2    constructional defect against a contractor … the *claimant* … Must give written notice [to the

3    contractor] … [s]pecify[ing] in reasonable detail the defects or any damages or injuries to each

4    residence or appurtenance *that is the subject of the claim*." [Emphasis added].

5           Contrary to the HOA's position, its assertion of the yellow brass claim against Lennar has

6    real and immediate legal implications to the homeowners that the HOA represents.  NRS 40.688

7    provides that "If a claimant attempts to sell a residence that is or has been the subject of a ***claim***

8    governed by NRS 40.600 to 40.695, inclusive, the claimant shall disclose, in writing, to any

9    prospective purchaser of the residence, … [a]ll notices given by the claimant to the contractor

10   pursuant to NRS 40.600 to 40.695, inclusive, that are related to the residence … ."  Thus, the

11   homeowners within the Anthem Highlands Community, whose claim the HOA is asserting, will

12   have to disclose the yellow brass claim to any prospective purchaser because it affects their

13   residence.[34]  Further, the NRS 40 has real and immediate legal implications to Lennar, who is

14   required to forward the notice to its implicated trade partners pursuant to NRS 40.646, otherwise,

15   Lennar would be barred from later commencing an action against such trade partner to recover for

16   the claim that is the subject of the NRS 40 notice.  Thus the HOA's assertion of the homeowner-

17   members' yellow brass claim has real and binding legal implications.

18                    **4.      NRS 40 Cannot Delay An Order Compelling Arbitration.**

19          The HOA's "limited" Response to Lennar's Motion seems to suggest that an order from

20   this Court compelling arbitration of the yellow brass claim is not appropriate unless and until the

21   NRS 40 pre-litigation inspection and repair process is completed.[35]  First, Lennar maintains that

22   the pre-arbitration inspection and mediation procedures set forth within the arbitration agreements

23   at issue here are consistent with the pre-litigation procedures of NRS 40.  There is no reason an

24   arbitrator could not oversee the pre-arbitration inspection and mediation process.

25          Further, the HOA's argument that the NRS 40 process must be completed before an order

26   
27   [34] NRS 40.688(2) further provides that "[b]efore taking any action on a claim pursuant to NRS 40.600 to 40.695, inclusive, the attorney for a claimant shall notify the claimant in writing of the provisions of this section."

28   [35] *See*, HOA's Limited Response (#12) at 6:5-10 (" 'NRS Chapter 40's provisions apply to "any" construction defect claims and the chapter's provisions 'prevail over any conflicting law otherwise applicable.'")

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

1   compelling arbitration is proper is ironic given that counsel for the HOA has previously asserted

2   that the NRS 40 process had been waived by Lennar as to the Anthem Highlands claim due to

3   Lennar's "disputed response" to the NRS 40 Notices.  On August 17, 2011, Lennar forwarded

4   letters to the HOA's counsel setting forth the deficiencies within the HOA's NRS 40 Notices and

5   further advising counsel that the dispute was subject to arbitration agreements with the HOA's

6   homeowner-members.[36]  Counsel for the HOA responded with two identical letters dated August

7   26, 2011, which stated that "[b]ased on you clients' disputed response to the claimant's NRS

8   Chatper 40 notice, please us know if you are authorized to accept service of a legal action on

9   behalf of your clients to resolve this matter and have this claims resolved on the merits and in the

10  manner that preserves our clients speedy access to justice without unreasonable waste of time or

11  resource."[37]

12       Finally, NRS 40 cannot be read to pre-empt, delay or otherwise conflict with the

13  procedures set forth within the arbitration agreements.  *See*, *Preston v. Ferrer*, 552 U.S. 346, 128

14  S.Ct. 978 (2008)(holding that "when parties agree to arbitrate … [the] Federal Arbitration Act

15  supersedes state laws lodging primary jurisdiction in another forum, whether judicial or

16  administrative.")  The pre-litigation procedures of NRS 40 cannot be interpreted as an obstruction

17  to the parties agreement to resolve all "disputes," as defined therein, pursuant to the procedures set

18  forth within the arbitration agreements, and an order compelling the parties to arbitrate the yellow

19  brass claim "in the manner provided for in such agreement[s]," including the pre-arbitration

20  inspection and mediation procedures set forth therein, is warranted.  *See*, *Id.* at 353 ("The FAA's

21  displacement of conflicting state law is 'now well established,' and has been repeatedly

22  reaffirmed.") quoting *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272, 115 S.Ct. 834

23  (1995); *see also*, 9 U.S.C.A. §4 (requiring an "order directing the parties to proceed to arbitration

24  in accordance with the terms of such agreement.")

25

26  _____
[36] *See*, August 17, 2011 Letters to J. Carraway from Payne & Fears on behalf of U.S. Home Corporation and
27  Greystone Nevada, LLC, attached hereto as exhibits "11" and "12," respectively.
[37] *See*, August 26, 2011 Letters from Terry Riedy to Payne & Fears on behalf of U.S. Home Corporation and
28  Greystone Nevada, LLC, attached hereto as Exhibits "13" and "14," respectively.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
7251 W. LAKE MEAD BLVD., SUITE 525
LAS VEGAS, NV 89128
(702) 382-3574

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV. <u>CONCLUSION</u>

For all of the foregoing reasons, Greystone and U.S. Home respectfully request that this Honorable Court issue an order compelling the original homeowners-members of the HOA within the Clermont, Earlstone and Glengarry Communities, who are the subject of this Motion, to arbitrate their yellow brass claims pursuant to the terms of the arbitration agreements and the Federal Arbitration Act.

DATED:  November 14, 2011                PAYNE & FEARS LLP


                                        By:/s/ Gregory H. King
                                            GREGORY H. KING, NV Bar No. 7777
                                            SARAH J. ODIA, NV Bar No. 11053
                                            7251 W. Lake Mead Blvd., Suite 525
                                            Las Vegas, NV 89128
                                            Telephone: (702) 382-3574

                                            Attorneys for Plaintiffs
                                            GREYSTONE NEVADA, LLC and U.S. HOME
                                            CORPORATION


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2011, I served a true and correct copy of the above and foregoing, **GREYSTONE NEVADA, LLC AND U.S. HOME CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION** was made this date by electronic transmission through the court's CM/ECF program.


                                        /s/ Nancy Babas
                                        Nancy Babas
                                        An Employee of PAYNE & FEARS LLP

4840-1665-8190.1