# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| GREYSTONE NEVADA, LLC et al., | ) |
| Plaintiffs, | ) |
| vs. | ) 2:11-cv-01424-RCJ-CWH |
| ANTHEM HIGHLANDS COMMUNITY ASSOCIATION, | ) **ORDER** |
| Defendant. | ) |

These consolidated removed class actions arise out of the installation in new homes of allegedly defective high-zinc-content brass ("yellow brass") plumbing fittings. Pending before the Court is Plaintiffs' motion to compel arbitration and Defendant's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. For the reasons given herein, the Court grants the motions in part and denies them in part. As noted at oral argument, the Judicial Panel on Multidistrict Litigation is currently considering a motion to transfer related cases from different districts to a single judge for pretrial proceedings. Still, the Court will consolidate the present case with Case No. 2:11-cv-1422-JCM-GWF, with the present case as the lead case.[1]

---

[1] The Court notes that it has the assent of the Hon. James C. Mahan to consolidate the cases under the present case. Although Judge Mahan's case is "older," and the normal practice is to designate the oldest of any consolidated cases as the lead case, these cases are factually

I. **FACTS AND PROCEDURAL HISTORY**

On or about June 30, 2011, Defendant Anthem Highlands Community Association ("Anthem Highlands") forwarded to Plaintiffs Greystone Nevada, LLC ("Greystone") and U.S. Home Corp. ("U.S. Home") notices of construction defects (the "Notices") pursuant to Nevada Revised Statutes ("NRS") section 116.3102(d) [sic]. (*See* Compl. ¶ 7, Sept. 2, 2011, ECF No. 1). The Notices stated that Defendant, in its statutory representative capacity, thereby made the claims against Plaintiffs for construction defects in Defendant's members' homes based upon the installation of plumbing systems with defective yellow brass components. (*Id.* ¶¶ 8–9). Each of the individual homeowners in Anthem Highlands (the "Homeowners") had previously entered into arbitration agreements with Greystone or U.S. Home, respectively, agreeing to arbitrate potential disputes, and these agreements are covenants running with the land enforceable against any present owners. (*Id.* ¶ 11).

Plaintiffs sued Defendant in this Court on five causes of action: (1)–(3) declaratory judgment (impliedly under 28 U.S.C. § 2201); (4) injunctive relief (impliedly under § 2202); and (5) compulsion of arbitration under 9 U.S.C. § 4. Defendant has moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim, and Plaintiffs have moved to compel arbitration, i.e., for offensive summary judgment on the fifth cause of action.

II. **LEGAL STANDARDS**

　A. **Motions to Compel Arbitration**

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28,

---

related to the *Slaughter v. Uponor* case, which is pending before this Court and on appeal to the Ninth Circuit. Ninth Circuit Case No. 10-15439 is the appeal of the merits rulings, and Case No. 10-17844 is the appeal of the award of attorneys' fees. Oral arguments in the appeal were scheduled for December 7, 2011. The Ninth Circuit's ruling will not necessarily affect the present cases, which concern arbitration requirements, as opposed to class action certification and the interplay between Rule 23 and the construction-defect notice procedures under state law.

>in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. This provision provides subject matter jurisdiction for a federal court to compel arbitration only where the court would have jurisdiction in the underlying dispute but for the Federal Arbitration Act ("FAA"). *Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.2d 1283, 1287 (9th Cir. 1984) ("A district court may employ this provision, however, only when an independent basis of federal jurisdiction already exists."). In other words:

>§ 4 of the FAA does not enlarge federal-court jurisdiction; rather, it confines federal courts to the jurisdiction they would have "save for [the arbitration] agreement." Mindful of that limitation, we read § 4 to convey that a party seeking to compel arbitration may gain a federal court's assistance only if, "save for" the agreement, the entire, actual "controversy between the parties," as they have framed it, could be litigated in federal court.

*Vaden v. Discover Bank*, 556 U.S. 49, 129 S. Ct. 1262, 1275 (2009) (citation omitted) (dismissing for lack of jurisdiction a bank's § 4 petition to compel arbitration of a consumer's counterclaim concerning finance charges, interest, and late fees in a state court action initiated by the bank over nonpayment of an unpaid balance).

### B.   Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides an affirmative defense by motion for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are of limited jurisdiction, possessing only those powers granted by the Constitution and statute. *See, e.g.*, *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008). The party asserting federal jurisdiction bears the burden of overcoming the presumption against it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S., 375, 377 (1994).

### 1.   Federal Question Jurisdiction

The district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A defense based on

federal law, e.g., federal preemption of a state law claim, does not provide jurisdiction under this section if jurisdiction is not supported by the complaint itself. *Hunter v. United Van Lines*, 746 F.2d 635, 639–40 (9th Cir. 1984).  A district court has jurisdiction over an action brought by a plaintiff asserting a federal defense to a ripe controversy where the plaintiff seeks to enjoin a state court order. *Champion Int'l Corp. v. Brown*, 731 F.2d 1406, 1407 (9th Cir. 1984).

### 2. Diversity Jurisdiction

The district courts have original jurisdiction over controversies where any single plaintiff has claims totaling over $75,000 (exclusive of interest and costs) against any single defendant, and where no plaintiff is a citizen of the same state as any defendant. *See* 28 U.S.C. § 1332(a)(1); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806); *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1474 (9th Cir 1997) (citing *Combined Commc'ns Corp. v. Seaboard Sur. Co.*, 641 F.2d 743, 744 n. 1 (9th Cir. 1981) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937))).  A court may only dismiss for failure to satisfy the jurisdictional amount where it appears "to a legal certainty" that a lesser amount is truly in controversy. *Budget Rent-A-Car, Inc.*, 109 F.3d at 1473 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).  "A claim in excess of the requisite amount, made in good faith in the complaint, satisfies the jurisdictional requirement." *Id.*

### 3. Class Action Jurisdiction

The district courts have original jurisdiction over class actions where at least 100 class members have claims totaling over $5,000,000 in the aggregate (exclusive of interest and costs), and where any plaintiff and any defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B), (d)(6).  A "class action" is a civil action filed pursuant to Rule 23 or similar state statute or rule. *Id.* § 1332(d)(1)(B).  A district court must decline jurisdiction in two circumstances: (1) where more than two-thirds of the proposed class members are citizens of the state where the action was filed, at least one defendant from whom significant relief is sought

1 and whose conduct forms a significant basis for the claims asserted is a citizen of the state where
2 the action was filed, the principal injuries were felt in the state where the action was filed, and
3 during the three-year period preceding the filing of the class action, no other class action has
4 been filed asserting the same or similar factual allegations against any of the defendants on
5 behalf of the same or other persons; or (2) where two-thirds or more of the members of the
6 proposed class, and the primary defendants, are citizens of the state where the action was filed.
7 *Id.* § 1332(d)(4)(A)–(B). A district court has discretion to decline jurisdiction under certain
8 circumstances. *See id.* § 1332(d)(3).

    **C.**    **Rule 8(a)**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation

1  is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*,
2  550 U.S. at 555).

3      "Generally, a district court may not consider any material beyond the pleadings in ruling
4  on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the
5  complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*
6  *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents
7  whose contents are alleged in a complaint and whose authenticity no party questions, but which
8  are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)
9  motion to dismiss" without converting the motion to dismiss into a motion for summary
10 judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule
11 of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*
12 *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court
13 considers materials outside of the pleadings, the motion to dismiss is converted into a motion for
14 summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th
15 Cir. 2001).

16 **III.    ANALYSIS**
17     **A.    Jurisdiction**
18     Because there must be an independent source of jurisdiction supporting a petition to
19 compel arbitration under § 4 of the FAA, the Court will first address Defendant's motion to
20 dismiss for lack of subject matter jurisdiction.  Only if there is federal subject matter jurisdiction
21 may the Court proceed to examine Plaintiffs' motion to compel arbitration.  There is no state
22 court or agency order to enjoin, and § 4 of the FAA is not an independent source of jurisdiction,
23 so the present declaratory judgment action pursuant to § 2201 and the petition to compel
24 arbitration under § 4 of the FAA must be based upon an independent federal question or
25 controversy supporting diversity jurisdiction or class-action jurisdiction.  Plaintiffs assert both

diversity and class-action jurisdiction under § 1332.

When a plaintiff petitions a court to compel arbitration under § 4, the amount in controversy for the purposes of § 1332 is the amount that would be in dispute in the arbitration. *America's MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 785–86 (7th Cir. 2004). Plaintiffs argue that the amount in controversy in each of the homes is between $10,404 to $23,183, based on Defendant's counsel's own experts' estimates in previous state cases, and that there are a total of 298 homes in the Anthem Highlands community, putting a total of approximately $3,100,392 to $6,908,534 in controversy. Because a plaintiff may aggregate his own claims against a single defendant to satisfy the amount-in-controversy requirement, there is therefore diversity jurisdiction if the putative claims of the Homeowners are properly considered as Defendant's own claims for the purposes of diversity jurisdiction.

Defendant notes that no individual Homeowner's putative claims are sufficient to satisfy the amount-in-controversy requirement. Plaintiffs respond that Defendant has initiated the Homeowners' claims for construction defects by filing mass Chapter 40 notices, *see* Nev. Rev. Stat. § 116.3102(1)(d), and that those claims should therefore be aggregated to satisfy the jurisdictional requirement. Under the circumstances of this case, Plaintiffs are correct. If Defendant had never given Plaintiffs Chapter 40 notices on behalf of Homeowners, Plaintiffs could perhaps not aggregate Homeowners' putative claims to implicate diversity jurisdiction in a declaratory judgment/arbitration compulsion action, because the ability of Defendant to represent Homeowners' claims in the aggregate does not come into effect unless and until Homeowners vote or agree in writing to approve such representation. *See id.* § 116.31088(1). The Court need not decide that question, however, because Defendant has in fact filed Chapter 40 notices against Plaintiffs under its statutory authority to represent Homeowners in such actions. (*See* Chapter 40 Notice to Greystone, June 30, 2011, ECF No. 15-1 (citing Nev. Rev. Stat. § 116.3102(d) [sic]); Chapter 40 Notice to U.S. Home, June 30, 2011, ECF No. 15-2 (citing

Nev. Rev. Stat. § 116.3102(d) [sic])).

When multiple putative plaintiffs assign their claims to a third-party assignee, the assignee may aggregate those claims to satisfy the jurisdictional amount in a diversity action, because an assignee is a real party in interest under Rule 17. *See Long & Foster Real Estate, Inc. v. NRT Mid-Atlantic, Inc.*, 357 F. Supp. 2d 911, 919–20 (E.D. Va. 2005). Likewise here, Defendant is the real party in interest as to the aggregated claims it brings under its statutory authority, because Homeowners have given Defendant authority to pursue those claims under the statute. All of the claims are therefore properly aggregated for the purposes of diversity jurisdiction.

There is, of course, a difference between a private assignment and a statutory authorization to sue in a representative capacity, but the difference only concerns the assignors' or represented parties' ability to take back the interest in the claim; an assignor's ability to take back his interest in the claim is governed by the terms of the assignment, whereas a statutorily represented party's ability to take back his interest in the claim is governed by the statute. But because both such an assignee and such a statutory representative are treated as real parties in interest under Rule 17, there is no reason to treat them differently for the purposes of aggregating claims under the diversity statute. The fact that an assignee ultimately keeps the proceeds of a successful claim, whereas a statutory representative does not, is irrelevant to whether a sufficient amount is in controversy between a single plaintiff against a single defendant. So long as a statutory representative is the real party in interest for certain claims under Rule 17, it may join all such claims under Rule 18 for the purposes of diversity jurisdiction. *See La-Tex Supply Co. v. Fruehauf Trailer Div., Fruehauf Corp.*, 444 F.2d 1366, 1368 (5th Cir. 1971). Defendant argues that the Homeowners must be individually joined as indispensable parties under Rule 19, but Plaintiffs correctly respond that "a party authorized by statute" is a real party in interest that "may sue in [its] own name[] without joining the person[s] for whose benefit the action is

brought." *See* Fed. R. Civ. P. 17(a)(1), (a)(1)(G).  Defendant has filed the Chapter 40 notices as the Homeowners' statutory representative.

The present action for declarations under § 2201, further relief under § 2202, and to compel arbitration under § 4 of the FAA is therefore independently supported by diversity jurisdiction under § 1332(a), and the Court denies the motion to dismiss for lack of subject matter jurisdiction.  The Court need not examine jurisdiction under §§ 1331 or 1332(d).

### B.     The Merits

Defendant argues that Plaintiffs have failed to state a claim.  Plaintiffs ask the Court to compel arbitration, which amounts to a motion for offensive summary judgment on Plaintiffs' Fifth Cause of Action.

#### 1.     The Fifth Cause of Action to Compel Arbitration

Defendant argues that Plaintiffs have produced no particular arbitration agreements between Plaintiffs and Homeowners, and notes that Plaintiff has only produced "exemplar" agreements, which are not all the same.  Defendant also argues that the agreements do not run with the land, so no subsequent purchasers are bound in any case.  As an initial matter, Plaintiffs have pled the claim sufficiently.  They have alleged that each Homeowner entered into arbitration agreements covering any dispute between the Homeowner and Plaintiffs, and that those agreements were part of restrictive covenants that run with the land. (Compl. ¶ 11).  This may or may not be true, but it is sufficiently pled.

Heather R. Thompson, the Senior Customer Service Representative for Lennar Corp., the parent company of both Plaintiffs, has filed an affidavit in support of Plaintiffs' motion to compel arbitration. (*See* Thompson Aff., Oct. 19, 2011, ECF No. 7-2).  Thompson attests that as a matter of policy, Plaintiffs retain arbitration agreements with home purchasers either as part of the home purchase agreement or in a separate document. (*See id.* ¶ 2).  Thompson has reviewed Plaintiffs' files, including the arbitration agreements executed by the Homeowners in Anthem

1  Highlands. (*Id.* ¶ 3). Thompson attests that the Homeowners listed in Exhibits D, E, and F
2  signed arbitration agreements. (*See id.*). Thompson has not attached each arbitration agreement
3  because Plaintiffs seek to compel arbitration for over 150 homes. (*Id.* ¶ 4). Thompson has
4  attached three exemplar contracts as Exhibits A, B, and C. (*Id.*). Thompson attests that all of the
5  Homeowners listed in Exhibit D signed arbitration agreements identical to the ones exemplified
6  in either Exhibits A or B (the "Clairmont Agreement 1" and "Clairmont Agreement 2,"
7  respectively), and that all of the Homeowners listed in Exhibits E and F signed arbitration
8  agreements identical to the one exemplified in Exhibit C (the "Earlstone and Glengarry
9  Agreement"). (*See id.*). These attestations sufficiently answer Defendant's objections to the use
10 of exemplars vice each separate agreement, unless Defendant can produce evidence indicating
11 that there are in fact more than three versions of the arbitration agreements that Plaintiffs seek to
12 enforce. Defendant attaches no such evidence.

13      The Clairmont Agreement 1 consists of a seven-page Purchase and Escrow Agreement
14 and a three-page Mediation and Arbitration Agreement ("MAA") concerning repairs to the
15 home, signed by Ramil and Teresa Del Rosario for the March 31, 2007 purchase of 2757
16 Auchmull St., Henderson, NV, Lot 28, Block 1. (*See* Clairmont Agreement 1, ECF No. 15-3).
17 The agreement requires mediation, and, if unsuccessful, "final, non-appealable, binding"
18 arbitration. (*See* MAA ¶ 5). Unless both parties agree in writing, the parties to the arbitration are
19 limited to Greystone and the Homeowner. (*Id.*). The MAA proclaims to be a covenant running
20 with the land. (*See id.* ¶ 7). The other two exemplar agreements contain similar terms, although
21 they do not proclaim themselves to be real covenants and in fact use only the language of
22 assignment and inheritance, as if there is no intention at all to cause the covenants therein to run
23 with the land. (*See* Clairmont Agreement 2 ¶¶ 16, 23, ECF No. 15-4; Earlstone and Glengarry
24 Agreement ¶¶ 18, 23(b); ECF No. 15-5).

25      Although the MAA in the Clairmont Agreement 1 proclaims itself to be a real covenant,

whether a covenant runs with the land is a matter of law:

> A real covenant is a promise governing the use of land made by one property holder usually for the benefit of another property holder, the benefit and burden of which are intended to and do pass to certain successors of the original parties. It is "a promise to do or refrain from doing certain things with respect to real property."

David A. Thomas, *Thompson on Real Property* § 61.02(a), at 582 (2d Thomas ed. 2006). The covenant in the MAA, however, is not a real covenant between property owners. *See id.* § 61.04(a), at 590. It is a personal contract between a property owner and a builder that has nothing to do with mutually beneficial land use. Even presuming the builder has retained or repurchased a parcel within the development, the MAA has nothing to do with use of the land as between a property owner and the builder *qua* property owner, but only governs disputes between property owners and the builder *qua* builder. There is no benefit to any landowner in his capacity as a landowner via the MAA. What does one of these Homeowners' neighbors care whether his neighbor mediates and arbitrates a construction defect claim against the builder rather than suing in court? Is a lawsuit heard or seen within the development? No. Will it cause nonuniformity in exterior decor? No. Does a lawsuit against the builder decrease the property values? No (if anything, it is the MAA that decreases property values by making it more difficult for any owner to recover for construction defects). There is no conceivable benefit to neighboring landowners via the MAA, even assuming Plaintiff builders own parcels and thus have standing to enforce a real covenant against a successor landowner. Although the MAA appears perfectly valid as a contract, it is simply not a real covenant. The statement therein declaring that the agreement runs with the land is of little more effect[2] than is a declaration in a contract declaring the contract not to be unconscionable. Such a statement may be correct, but if so, it is correct by accident, not by necessity. Unconscionability, ambiguity, nullity, etc. are not

---

[2] An expression of intent to make a covenant real vice personal is important, because such intent is necessary, *see id.* § 61.04(c)(1)–(2), at 603–04, but it is not sufficient.

internal terms of a contract but external characteristics of a contract's nature.  A contract may declare its terms by fiat but not its characteristics.  Whether a covenant is real or personal depends heavily on its external characteristics.

An agreement to arbitrate can under the proper circumstances run with the land.  For example, an agreement between a lessor and lessee to arbitrate rent disputes runs with the land to bind parties to any assignments of the lease. *Melchor Inv. Co. v. Rolm Systems*, 4 Cal. Rptr. 2d 343, 347 (Ct. App. 1992); *Abbott v. Bob's U-Drive*, 352 P.2d 598, 604 (Or. 1960).  In such a situation, the covenant to arbitrate rent disputes, like the agreement to pay rent itself, touches and concerns the land, because rent is an obligation between one with the right to possess the land and the land's owner, both of whom have a present interest in the land. *Melchor Investment Co.*, 4 Cal. Rptr. 2d at 347.  But the California Court of Appeals has specifically rejected the argument that a contractual agreement between a purchaser and a developer to arbitrate construction defect claims constitutes a real covenant that runs with the land, at least where the developer does not continue to own or possess any parcel of the property. *See Villa Vicenza Homeowners Assn. v. Nobel Court Dev., LLC*, 120 Cal. Rptr. 3d 217, 226–27 (Ct. App.), *cert. granted*, 123 Cal. Rptr. 3d 577 (2011).  Plaintiffs' only allegation as to their interest in Anthem Highlands is that they "developed" the property, which is not a claim of any present ownership or possessory interest. (*See* Compl. ¶ 6).  Plaintiffs do not claim to own any parcel at Anthem Highlands or to have any possessory interest in the property for the purposes of management or otherwise. (*See generally id.*).

In summary, the arbitration agreements appear valid as contracts, but they do not appear to constitute real covenants.  Plaintiffs have produced evidence that certain persons have entered into arbitration agreements when they purchased their properties, but Plaintiffs have not provided evidence indicating whether those persons still own those properties.  At oral argument, Plaintiffs admitted that the arbitration agreements did not run with the land and indicated they

1 would only seek to have them enforced against those Homeowners who signed them.

2 Defendants have not rebutted the contract evidence. The Court therefore grants the
3 motion to compel arbitration in part: those Homeowners who personally signed arbitration
4 agreements are bound to arbitrate with respect to those properties. The Court will leave it to the
5 arbitrator whether the Homeowners may arbitrate the claims of multiple Homeowners in a single
6 arbitration proceeding.

### 2. The First Through Fourth Causes of Action

The First through Third Causes of Action are for declarations. First, Plaintiffs ask the Court to declare that the Chapter 40 notices they received are statutorily defective, that Defendant must give Plaintiffs reasonable access to the properties under the statutes, and that Defendant must give access to each home and not only a representative sample. Second, Plaintiffs ask the Court to declare that Defendant has not satisfied the Chapter 40 prerequisites for pursuing Homeowners' claims in a representative capacity. Third, Plaintiffs ask the Court to declare that the Homeowners' claims must be arbitrated if not resolved in the Chapter 40 process. The Fourth Cause of action is for injunctive relief, impliedly brought under § 2202, which permits "[f]urther necessary or proper relief based on a declaratory judgment or decree." The Court will not dismiss these claims as inconsistent with the assertion of federal jurisdiction.

///
///
///
///
///
///
///
///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Transfer (ECF No. 9 in Case No. 2:11-cv-1422-JCM-GWF) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall CONSOLIDATE the present case with Case No. 2:11-cv-1422-JCM-GWF, with the present case as the lead case.

IT IS FURTHER ORDERED that the Motions to Compel Arbitration (ECF No. 7 in the present case; ECF No. 10 in Case No. 2:11-cv-1422-JCM-GWF) are GRANTED in part. All Homeowners who signed the arbitration agreements must arbitrate their claims.

IT IS FURTHER ORDERED that the Motions to Dismiss (ECF No. 11 in the present case; ECF No. 16 in Case No. 2:11-cv-1422-JCM-GWF) are DENIED.

IT IS FURTHER ORDERED that the Clerk shall also enter the present order into the docket of Case No. 2:11-cv-1422-JCM-GWF, and that all future filings shall be made in the present case.

IT IS FURTHER ORDERED that Plaintiffs shall submit a proposed consolidated judgment identifying those Homeowners who, having signed arbitration agreements, must arbitrate their claims.

IT IS SO ORDERED.

Dated this 24th day of February, 2012.

_____
ROBERT C. JONES
United States District Judge