UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GREYSTONE NEVADA, LLC et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>ANTHEM HIGHLANDS COMMUNITY )<br>ASSOCIATION, )<br>)<br>Defendant. )<br>_____ ) | 2:11-cv-01424-RCJ-CWH<br><br>**ORDER** |

These consolidated removed class actions arise out of the installation in new homes of allegedly defective high-zinc-content brass ("yellow brass") plumbing fittings.[1] Pending before the Court are three motions for reconsideration, two motions to dismiss Defendant's respective Counterclaims in the consolidated cases, and two motions to stay. For the reasons given herein, the Court denies the motions to reconsider, grants the motions to dismiss in part, with leave to amend in part, and denies the motions to stay, without prejudice.

///

---

[1] The cases are factually related to the *Slaughter v. Uponor* case, which has been reversed and remanded, and which is once again pending. The Court has not consolidated the present cases with the *Slaughter* case, and the Court of Appeals' ruling in *Slaughter* does not affect the present cases, which concern arbitration requirements, as opposed to class action certification and the interplay between Rule 23 and the construction-defect notice procedures under state law.

## I. FACTS AND PROCEDURAL HISTORY

On or about June 30, 2011, Defendant Anthem Highlands Community Association ("Anthem Highlands") forwarded to Plaintiffs Greystone Nevada, LLC ("Greystone") and U.S. Home Corp. ("U.S. Home") notices of construction defects (the "Notices") pursuant to Nevada Revised Statutes ("NRS") section 116.3102(d) [sic]. (*See* Compl. ¶ 7, Sept. 2, 2011, ECF No. 1).

The Notices stated that Anthem Highlands, in its statutory representative capacity, thereby made the claims against Plaintiffs for construction defects in Anthem Highlands' members' homes based upon the installation of plumbing systems with defective yellow brass components. (*Id.* ¶¶ 8–9). Each of the individual homeowners in Anthem Highlands (the "Homeowners") had previously entered into arbitration agreements with Plaintiffs, agreeing to arbitrate potential disputes, and these agreements are alleged to be covenants running with the land enforceable against any present owners. (*See id.* ¶ 11).

Plaintiffs sued Anthem Highlands in this Court on five nominal causes of action: (1)–(3) declaratory judgment (impliedly under 28 U.S.C. § 2201); (4) injunctive relief (impliedly under § 2202); and (5) compulsion of arbitration under 9 U.S.C. § 4.[2]  Defendants moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim, and Plaintiffs moved to compel arbitration, i.e., for offensive summary judgment on the fifth cause of action. The Court denied the motions to dismiss, finding that there was diversity jurisdiction supporting the claims, because Defendants had statutory authority to sue on behalf of the individual homeowners, making it a real party in interest under the rules and whose claim was the aggregate of the claims of the individual parties it represented. The Court also found that Plaintiffs had sufficiently stated a claim. The Court granted the motion to compel arbitration in part, ruling that arbitration

---

[2] In the '1422 Case, Greystone sued Defendant Fiesta Park Homeowners' Association ("Fiesta Park") upon similar facts, using a substantially identical complaint. The actions have been consolidated, with the '1424 Case as the lead case.

was required as to any homeowner who had individually signed the arbitration agreement, but that the arbitration agreement was not a real covenant enforceable against a subsequent purchaser.[3] The Court left it to the arbitrator(s) whether homeowners could consolidate their arbitration hearings under the arbitration agreement. The Court refused to dismiss the claims for declaratory and injunctive relief based upon lack of jurisdiction. Finally, the Court solicited a proposed consolidated judgment compelling arbitration. Plaintiffs submitted a proposed judgment, which the Court signed. The Judgment requires arbitration by all homeowners identified in Exhibit A thereto, which lists 271 homeowners (counting tenants-in-common as a single party). The operative part of the judgment reads:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that in accordance with the Court's February 24, 2012 Order, judgment is hereby entered in these consolidated actions against the Homeowners compelling them to arbitrate any and all claims they have related to alleged "yellow brass" plumbing components and systems within their respective Properties, including any and all claims related to the January 27, 2011 and June 30, 2011, NRS 40.600, *et seq.* Notices of Defects forwarded to Plaintiffs by Defendants on behalf of the Homeowners. The arbitrations must proceed pursuant to the terms of the Arbitration Agreements.
>
> The Court shall retain jurisdiction in these actions over the homeowners listed in Exhibit "A" for the purposes set forth within sections 9 though 16 of the Federal Arbitration Act (9 U.S.C. § 9, *et seq.*).

(J. 2:3–12, Mar. 14, 2012, ECF No. 31). The parties have filed several motions to reconsider, to dismiss, and to stay the case.

## II.     LEGAL STANDARDS

### A.     Reconsideration

"A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Defendants filed the present motions for reconsideration within twenty-eight days of the relevant judgment. The motion is therefore timely under Rule

---

[3] At oral argument, Plaintiffs retracted their argument that the agreements were real covenants and agreed to pursue arbitration only against those homeowners who had signed the agreements.

Page 3 of 14

59(e).

**B.     Dismissal**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009) (citing *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which

are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**III.    ANALYSIS**

    **A.    Motions to Reconsider**

        **1.    Motion No. 32**

Anthem Highlands asks the Court to modify its order and judgment *nunc pro tunc* to remove any reference to a "judgment." Movant argues that under the FAA, a court may only enter an "order" compelling arbitration and a "judgment" enforcing an arbitration award. Because the Court has thus far only done the former, movants asks the Court to amend its order and judgment to remove any reference to a "judgment."

The Court denies the motion. The Court has properly entered judgment on the fifth cause of action to compel arbitration. Whether called an "order" or a "judgment," the entry was clearly within the Court's power, and Anthem Highlands does not (and cannot) claim any prejudice arising from the difference in terminology. Because the order compelling arbitration finally adjudicated the fifth cause of action to compel arbitration, the entry was properly labeled as a "judgment," notwithstanding the terminology Congress chose to use in the FAA when discussing the procedures for compelling arbitration versus enforcing arbitration awards. No one proficient in the English language will possibly be led to believe that the Court has purported in the previous judgment to enforce any existing arbitration award.

### 2. Motion No. 44

Plaintiffs ask the Court to amend the judgment to note that there is no just reason to delay an appeal, i.e., to certify the judgment for immediate appeal under Rule 54(b). The Court grants the motion. The order compelling arbitration totally adjudicates the present consolidated cases as to those homeowners who personally signed arbitration agreements. There is no just reason to delay review. An appeal will not be mooted by subsequent developments. The remaining claims are for declarations and injunctions related to the compliance of the remaining homeowners with the Chapter 40 notice, inspection, and opportunity-to-repair requirements. No rulings in that area will affect the arbitrability of the construction defect claims, as the FAA plainly preempts Nevada's Chapter 40 process.

### 3. Motion No. 45

Both Defendants, in addition to rehashing the arguments made in Motion No. 32, challenge the inclusion of at least seven homeowners (William Cervantes, Jason Rosenberg et al., Eduardo Cruz, Jerome Javate et al., Avelina Villosillo, Rachelle Daroy-Lopez, and the Mark and George Gummerson Trust (the "Trust")) in Exhibit A to the judgment compelling arbitration. Defendants attach evidence purportedly indicating that these homeowners are in fact subsequent purchasers. The evidence consists of print-offs of assessor records indicating that before the current owners purchased their respective properties, the properties were owned by multiple successive corporations or LLCs. But Defendants do not affirmatively allege that these homeowners have never signed arbitration agreements, which is the dispositive question. It is possible that subsequent purchasers signed arbitration agreements with one of Plaintiffs. As Plaintiffs show in their response, the seven purchasers at issue all signed arbitration agreements with Greystone when they bought the properties directly from Greystone. Also, "subsequent" in the present context means subsequent to the sale from Greystone. If Greystone acquired the development from another company before the units were sold to residents, which appears to be

1  the case, the fact that a residential purchaser purchased his unit "subsequent" to Greystone's
2  purchase from another company is irrelevant if Greystone had that residential purchaser sign an
3  arbitration agreement. Ultimately, Defendants ask the Court to compel Plaintiffs to produce the
4  alleged 271 arbitration agreements for examination by counsel.

5  Plaintiffs respond that Defendants had an opportunity to review the arbitration
6  agreements but refused to do so. This claim is supported by an authenticated letter between
7  counsel. (*See* Letter, Oct. 28, 2011, ECF No. 56, Ex. B to Ex. 1). Plaintiffs also attach, as
8  Exhibits A–G to Exhibit 2 to Document No. 56, authenticated copies of arbitration agreements
9  signed by the seven parties Defendants claim are "subsequent purchasers." (*See* Purchase and
10 Sale Agreements, ECF No. 56, Exs. A–G to Ex. 2). These documents are sales contracts
11 between Greystone and the respective homeowners, indicating that these seven homeowners are
12 not in fact "subsequent purchasers," as claimed by Defendants. Paragraph 16.1 of the contract
13 signed by Cervantes requires the arbitration of all disputes related to the property. (*See* Purchase
14 and Sales Agreement ¶ 16.1, Aug. 16, 2009, ECF No. 56, Ex. A to Ex. 2). Rosenberg et al.
15 signed a substantively identical contract on June 7, 2009 when they bought their property
16 directly from Greystone. (*See* Purchase and Sales Agreement ¶ 16.1, June 7, 2009, ECF No. 56,
17 Ex. B to Ex. 2). Cruz et al. signed a separate Mediation and Arbitration Agreement on
18 November 8, 2007 when they bought their property directly from Greystone. (*See* Purchase
19 Agreement and Escrow Instructions, Nov. 8, 2007, ECF No. 56, Ex. C to Ex. 2; Mediation and
20 Arbitration Agreement, Nov. 8, 2007, ECF No. 56, Ex. C to Ex. 2). Javate signed a contract
21 substantively identical to that Cervantes signed on June 9, 2008 when he bought his property
22 directly from Greystone. (*See* Purchase and Sales Agreement ¶ 16.1, June 9, 2008, ECF No. 56,
23 Ex. D to Ex. 2). As did Villosillo. (*See* Purchase and Sales Agreement ¶ 16.1, May 15, 2009,
24 ECF No. 56, Ex. E to Ex. 2). As did Daroy-Lopez. (*See* Purchase and Sales Agreement ¶ 16.1,
25 Apr. 19, 2009, ECF No. 56, Ex. F to Ex. 2). The Trust signed a separate Mediation and

1 Arbitration Agreement on December 5, 2006 when it bought its property directly from
2 Greystone. (*See* Purchase Agreement and Escrow Instructions, Dec. 5, 2006, ECF No. 56, Ex. G
3 to Ex. 2; Mediation and Arbitration Agreement, Dec. 5, 2006, ECF No. 56, Ex. G to Ex. 2).
4 None of these homeowners appears to have purchased his or her property from another
5 residential owner, but only from Greystone, and they all signed agreements to arbitrate along
6 with their purchases.

7 In summary, Defendants' claims that the seven homeowners they have identified are
8 subsequent purchasers who need not arbitrate with Greystone is definitively refuted by the
9 evidence, there is no evidence adduced to the contrary, and Defendants' fears that other
10 homeowners listed in the judgment need not arbitrate are unfounded. These seven homeowners
11 purchased their properties directly from Greystone, and each of them either signed a separate
12 arbitration agreement or a sales contract including such an agreement. The Court denies the
13 motion to reconsider.

14 **B. Motions to Dismiss**

15 In two substantively similar motions, Plaintiffs ask the Court to dismiss Defendants'
16 respective counterclaims for failure to comply with Chapter 40's notice, inspection, and
17 opportunity-to-repair requirements. When a construction-defect plaintiff in Nevada has failed to
18 file a notice pursuant to NRS section 40.645 or has failed thereafter to permit an inspection and
19 reasonable opportunity to repair pursuant to NRS section 40.647(1), a court must dismiss the
20 case without prejudice and compel the plaintiff to comply before filing another action. *See* Nev.
21 Rev. Stat. § 40.647(2)(a).

22 Defendants filed their respective Chapter 40 notices on behalf of their respective
23 members pursuant to Nevada Revised Statutes ("NRS") section 116.3102(1)(d) on January 27,
24 2011 and June 30, 2011. They filed the present cases on September 2, 2011. The notices
25 included declarations from David J. Coates that he had inspected sample fittings from a few of

1 the class members' homes and found them defective due to high zinc content brass.  Plaintiffs

2 sent Defendants letters requesting inspections pursuant to NRS section 40.6462, but the

3 responses from Defendants were either nonresponsive or requested "detailed information" of

4 how the inspections would be conducted.  In the Fiesta Park case, Fiesta Park later sent a letter

5 with a proposed inspection protocol not required by the statute.  Plaintiffs, having not been

6 granted access to inspect, again demanded access and also arbitration.  Defendants denied access

7 and refused to arbitrate.

8       A failure to file Chapter 40 notices before filing the present action mandates dismissal

9 under the state statute. *See* Nev. Rev. Stat. § 40.647(2), (2)(a) ("If a claimant commences an

10 action without complying with subsection 1 or NRS 40.645, the court shall [d]ismiss the action

11 without prejudice and compel the claimant to comply with those provisions before filing another

12 action . . . .").  Plaintiffs first argue that the Chapter 40 notices were insufficient under the statute

13 because they did not include addresses of each home, the location of each defect, or a basis fir

14 the defect allegations as to each residence.  But the Nevada Supreme Court has ruled that under

15 the "reasonable detail" standard of the notice statute, a mass Chapter 40 notice is sufficient in

16 this regard because the statute is ambiguous, and the legislative history indicated that the

17 approach advocated by the contractors' lobby, which the legislature adopted, envisioned that

18 homeowners with similarly situated homes containing a common defect could use a

19 representative sampling of the defect to support a mass notice. *See D.R. Horton, Inc. v. Eighth*

20 *Judicial Dist. Court ex rel. Cnty. of Clark*, 168 P.3d 731, 737–39 (Nev. 2008).  The Court

21 adopted a "reasonable threshold test." *See id.* at 739.

22     Homes included within the scope of an extrapolated notice typically will be similarly
    situated only if they are part of a subset of homes within the development.  In some
23     cases, a subset of homes for extrapolation purposes may be those of a particular floor
    plan.  In other cases, depending on the nature or location of the defect, the subset of
24     homes to which the extrapolated notice applies may be even narrower, such as homes
    of a particular elevation within a particular floor plan.  Likewise, a valid extrapolated
25     notice may be limited to a subset of homes in which a particular product or type of

> construction was used.  In all cases, an extrapolated notice is valid only if it identifies the subset or characteristics of the subset to which it applies.  In order to achieve the minimum statistical basis that the reasonable threshold test requires, we suggest that the district court require the claimants' expert to test and verify the existence of the alleged defect in at least one of the homes in each subset of homes included within the scope of the extrapolated notice.  Additionally, the claimants must provide the address of each home tested and clearly identify the subset of homes to which the pre-litigation notice applies.

*Id.* at 740.  Here, there is a single subset of homes in each case: all homes in the Anthem Highlands and Fiesta Park developments, which were presumably constructed with the same materials.  The Court therefore finds that the reasonable threshold test is satisfied and that the mass notices based upon the representative samples is sufficient.

Defendants, however, must permit Plaintiffs an opportunity to inspect and repair the homes.  Plaintiffs allege that in the Anthem Highlands Case they were flatly refused an opportunity to inspect and repair, and that in the Fiesta Park Case they were met with a detailed inspection protocol that they chose not to adopt.  Unfortunately, although the Chapter 40 inspection and repair process appeared to the Nevada Legislature like a good solution on paper, because the procedure includes no adult supervision, it seems to often devolve into an unproductive bickering match, especially once attorneys become involved.  The Court will deny the motions to dismiss without prejudice, but Defendants must permit access to any home covered by the notices, for inspection and repair.

Plaintiffs also ask the Court to dismiss the claims for breach of express warranties.  Plaintiffs argue that a claim of breach of express warranty must allege the exact terms of the warranty, reasonable reliance thereupon, and a breach proximately causing injury.  Plaintiffs argue that Defendants have not alleged the exact terms of the warranty or where the warranties are found.  Plaintiffs note that Defendants allege that the express warranties are contained in product catalogues, manuals, and other advertising materials.  In Nevada, any affirmation of fact, promise, description of goods, sample, or model that is made the basis of a bargain creates an

express warranty. Nev. Rev. Stat. § 104.2313(1).  However, a seller's opinion or commendation of the goods does not create an express warranty. *Id.* § 104.2313(2).  The Court will dismiss the counterclaims for breach of express warranty without prejudice.  The claim of breach is possible but not plausible unless and until Defendants allege the precise representation so the Court can determine whether it was a statement of fact or opinion.

Next, Plaintiffs ask the Court to dismiss the counterclaims for negligent misrepresentation for failure to comply with Rule 9(b).  The Court grants the motion in this regard, with leave to amend.  The Counterclaims include no details of any particular misrepresentation concerning the plumbing systems.

Next, Plaintiffs argue that a strict liability claim based upon alleged defects in homes or components is not viable under Nevada law.  A building itself is not a "product" for the purposes of strict liability in Nevada. *See Calloway v. City of Reno*, 993 P.2d 1259, 1272 (Nev. 2000).

> [W]hen a heating and plumbing system damages the building as a whole, the building has injured itself and only economic losses have occurred.
>
> . . . .
>
> The damage caused by the allegedly defective framing therefore constituted damage to the structures themselves—no "other" property damage resulted, and appellants suffered purely economic losses.  Because of the alleged construction defects appellants failed to receive the benefit of their bargains; the defects resulted in a lower standard of quality than that expected.  Such inferior workmanship, which leads to building deterioration, is not properly addressed by tort law.  In such circumstances, the overriding policy of tort law, to promote safety, is not implicated.  We therefore discern no reason to impose, in tort law, a general societal duty to prevent such economic losses.

*Id.* at 1268–69 (citation omitted).  *Calloway* has been overruled in light of Chapter 40 to the extent it held that a negligence claim is not viable in a construction defect case, *see Olson v. Richard*, 89 P.3d 31, 33 (Nev. 2004), but *Calloway*'s holding that strict liability is not available based upon property damage to the building itself due to a defective component of the building itself has not been overruled.  The Court will therefore dismiss the strict liability counterclaim,

without leave to amend.

Finally, Plaintiffs ask the Court to dismiss the deceptive trade practices counterclaims for failure to satisfy Rule 9(b). Some Chapter 598 claims sound in fraud. *Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 435 (Nev. 2010) (citing Nev. Rev. Stat. § 598.0923(2)). However, the Nevada Supreme Court has also noted that statutory fraud actions such as those under Chapter 598 are created "to provide consumers with a cause of action that [i]s easier to establish than common law fraud, and therefore, statutory fraud must only be proven by a preponderance of the evidence." *Id.* at 435–36 (citing *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 89 (Ariz. Ct. App. 1983)). "Statutory offenses that sound in fraud are separate and distinct from common law fraud." *Id.* at 436. Because Chapter 598 is silent on whether Rule 9(b) applies, and because the Court has ruled that statutory fraud need not be proven by clear and convincing evidence, as common law fraud must be, the Court anticipates that the Nevada Supreme Court would not apply Rule 9(b) to the statutory cause of action for fraud where the Legislature has not specifically required it. The Court will deny the motion to dismiss this claim on this basis.

### C. Motions to Stay

Plaintiffs filed an ex parte motion, and later a public motion, asking the Court to stay the case based upon an order (the "Order") by the U.S. District Court for the District of Minnesota (the "MDL Court") enjoining and staying all actions involving Uponor F1807 yellow brass fittings. Because Defendants have brought counterclaims in the present consolidated action related to Uponor/Wirsbo yellow brass fittings, Plaintiffs ask the Court to stay the case because Defendants refuse to confirm that their counterclaim does not concern such fittings.

The Order was entered on January 19, 2012 and is attached at Exhibit 1 to Motion No. 54. The MDL case involves five consolidated yellow brass actions. The MDL Court has approved a settlement, subject to a final fairness hearing after an opt-out notice procedure. The MDL Court approved two settlement classes, one for person's whose F1807 systems had already

leaked, and one for those whose F1807 systems haven't yet leaked.  The settlement class includes all persons in the United States that own or have owned structures that contain or have ever contained ASTM F1807 style plumbing systems manufactured or sold by Radiant Technology, Inc. or Uponor, Inc. and their predecessors installed on or after May 15, 1999. (*See* Order 3–4, Jan. 19, 2012, ECF No. 54, Ex. 1).  The MDL Court ordered:

> that any actions or proceedings pending in any court in the United States involving an RTI F1807 System, except any matters necessary to [the] implement[ation], advance[ment], or further approval of the Agreement of settlement process, are stayed pending the Final Fairness Hearing and the issuance of a Final Order and Judgment.

(*Id.* 18; *see id.* 22).  The MDL Court also enjoined class members from filing or otherwise participating in any proceedings in any jurisdiction relating to the RTI F1807 system. (*See id.* 18, 22–23).  The final fairness hearing has been scheduled for June 26, 2012. (*See id.* 23).

Plaintiffs adduce correspondence between counsel, in which Plaintiff's counsel notifies Defendants' counsel of the Order and asks them to confirm whether any counterclaims concern the Uponor F1807 fitting. (*See* Letter, Mar. 21, 2012, ECF No. 54, Ex. 2).  Defendants' counsel responded that they are aware of no such fittings in their clients' homes, and that the supporting materials attached to the Chapter 40 notice identify the system as a Wirsbo system that doesn't "look anything like an RTI F1807 system." (*See* Letter, Mar. 26, 2012, ECF No. 54, Ex. 3).  Plaintiffs' counsel replied that the counterclaims were broad enough to include the F1807 fittings, and requested written verification that Defendants did not base their claims upon such fittings. (*See* Letter, Apr. 17, 2012, ECF No. 54, Ex. 4).  Defendants' counsel's reply was nonresponsive. (*See* Letter, Apr. 20, 2012, ECF No. 54, Ex. 5).  The Court denies the motions to stay, because Plaintiffs at the hearing disclaimed any counterclaims based upon F1807 fittings.

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions to Reconsider (ECF Nos. 32, 44, 45) are DENIED.

IT IS FURTHER ORDERED that the Motions to Dismiss Counterclaim (ECF Nos. 36, 37) are GRANTED in part and DENIED in part, with leave to amend in part.

IT IS FURTHER ORDERED that the Motions to Stay (ECF Nos. 54, 60) are DENIED.

IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 25 in Case No. 2:11-cv-1422) is STRICKEN.  The Court has ordered that all motions be filed in Case No. 2:11-cv-1424.

IT IS FURTHER ORDERED that the parties shall file a joint status report within fourteen (14) days of the entry of this Order into the electronic docket, listing which Anthem Highlands and Fiesta Park homeowners are and are not required to arbitrate in accordance with the Court's rulings thus far.  The status report shall contain a jurisdictional statement.  Because the Court has ordered arbitration as to those unit owners who are subject to such agreements, and because the Court has ruled that the arbitration agreements are not real covenants applicable to subsequent purchasers, it appears that Plaintiffs have obtained all the relief they will obtain under their Complaint, and that only certain surviving counterclaims brought on behalf of unit owners who need not arbitrate supports further jurisdiction.  The status report shall explain why the Court does or does not have jurisdiction over the associations' counterclaims under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977).

IT IS SO ORDERED.

Dated this 9th day of July, 2012.

_____
ROBERT C. JONES
United States District Judge