UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| GREYSTONE NEVADA, LLC et al., | ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 2:11-cv-01424-RCJ-CWH |
| ANTHEM HIGHLANDS COMMUNITY ASSOCIATION, | ) ) ) | **ORDER** |
| Defendant. | ) ) ) | |

These consolidated removed class actions arise out of the installation in new homes of allegedly defective high-zinc-content brass ("yellow brass") plumbing fittings.[1]  Pending before the Court is Third-party Defendants' motion to dismiss the Third Party Complaint and strike the class allegations therein, as well as three motions to reconsider, a motion to shorten time, and a motion to extend time.

///

---

[1] The cases are factually related to the *Slaughter v. Uponor* case, which has been reversed and remanded, and which is once again pending before the Court.  The Court has not consolidated the present cases with the *Slaughter* case, and the Court of Appeals' ruling in *Slaughter* does not affect the present cases, which concern arbitration requirements, as opposed to class action certification and the interplay between Rule 23 and the construction-defect notice procedures under state law.

I.  **FACTS AND PROCEDURAL HISTORY**

On or about June 30, 2011, Defendant Anthem Highlands Community Association ("Anthem Highlands") forwarded to Plaintiffs Greystone Nevada, LLC ("Greystone") and U.S. Home Corp. ("U.S. Home") notices of construction defects (the "Notices") pursuant to Nevada Revised Statutes ("NRS") section 116.3102(d) [sic]. (*See* Compl. ¶ 7, Sept. 2, 2011, ECF No. 1).

The Notices stated that Anthem Highlands, in its statutory representative capacity, thereby made the claims against Plaintiffs for construction defects in Anthem Highlands' members' homes based upon the installation of plumbing systems with defective yellow brass components. (*Id.* ¶¶ 8–9). Each of the individual homeowners in Anthem Highlands (the "Homeowners") had previously entered into arbitration agreements with Plaintiffs, agreeing to arbitrate potential disputes, and these agreements are alleged to be covenants running with the land enforceable against any present owners. (*See id.* ¶ 11).

Plaintiffs sued Anthem Highlands in this Court on five nominal causes of action: (1)–(3) declaratory judgment (impliedly under 28 U.S.C. § 2201); (4) injunctive relief (impliedly under § 2202); and (5) compulsion of arbitration under 9 U.S.C. § 4.[2] Defendants moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim, and Plaintiffs moved to compel arbitration, i.e., for offensive summary judgment on the fifth cause of action. The Court denied the motions to dismiss, finding that there was diversity jurisdiction supporting the claims, because Defendants had statutory authority to sue on behalf of the individual homeowners, making them real parties in interest under the rules, whose claim was the aggregate of the claims of the individual parties it represented. The Court also found that Plaintiffs had sufficiently stated a claim. The Court granted the motion to compel arbitration in part, ruling that arbitration

---

[2] In the '1422 Case, Greystone sued Defendant Fiesta Park Homeowners' Association ("Fiesta Park") upon similar facts, using a substantially identical complaint. The actions have been consolidated, with the present case as the lead case.

was required as to any homeowner who had individually signed the arbitration agreement, but that the arbitration agreement was not a real covenant enforceable against a subsequent purchaser.[3] The Court left it to the arbitrator(s) whether homeowners could consolidate their arbitration hearings under the arbitration agreement. The Court refused to dismiss the claims for declaratory and injunctive relief based upon lack of jurisdiction. Finally, the Court solicited a proposed consolidated judgment compelling arbitration. Plaintiffs submitted a proposed judgment, which the Court signed. The Judgment requires arbitration by all homeowners identified in Exhibit A thereto, which lists 271 homeowners (counting tenants-in-common as a single party). The operative part of the judgment reads:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that in accordance with the Court's February 24, 2012 Order, judgment is hereby entered in these consolidated actions against the Homeowners compelling them to arbitrate any and all claims they have related to alleged "yellow brass" plumbing components and systems within their respective Properties, including any and all claims related to the January 27, 2011 and June 30, 2011, NRS 40.600, *et seq.* Notices of Defects forwarded to Plaintiffs by Defendants on behalf of the Homeowners. The arbitrations must proceed pursuant to the terms of the Arbitration Agreements.
>
> The Court shall retain jurisdiction in these actions over the homeowners listed in Exhibit "A" for the purposes set forth within sections 9 though 16 of the Federal Arbitration Act (9 U.S.C. § 9, *et seq.*).

(J. 2:3–12, Mar. 14, 2012, ECF No. 31). The parties filed several motions to reconsider, to dismiss, and to stay the case. The Court denied the motions to reconsider, granted the motions to dismiss the Counterclaim in part, with leave to amend in part, denied the motions to stay, struck a motion to dismiss filed improperly under Case No. 2:11-cv-1422, and order the parties to file a joint status report listing which homeowners are and are not required to arbitrate consistent with the Court's rulings thus far and discussing Article III standing under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977).

---

[3] At oral argument, Plaintiffs retracted their argument that the agreements were real covenants and agreed to pursue arbitration only against those homeowners who had signed the agreements.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

1  motion to dismiss" without converting the motion to dismiss into a motion for summary

2  judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule

3  of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay

4  Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court

5  considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

6  summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.

7  2001).

## III. ANALYSIS

### A. Motion to Dismiss

The class identified in the TPC consists of all yellow-brass-aggrieved "owners or residences constructed in the Anthem Highlands community . . . ." (*See* Answer, Counterclaim, and TPC 29, Mar. 9, 2012, ECF No. 27). Defendants bring eight class claims against TPD. TPD ask the Court to dismiss the TPC for three reasons: (1) lack of Article III standing; (2) impermissible claim-splitting; and (3) failure to state a claim. The Court grants the motion based upon impermissible claim-splitting. As the Court recently ruled in a related case:

> A suit is duplicative and should be dismissed for improper claim splitting if an earlier suit by the same plaintiff against the same defendant for the same claim is already pending such that the eventual adjudication of the previous suit would preclude the claim in the later-filed suit. *See Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688–89 (9th Cir. 2007). Movants argue that the rule should apply where the same law firms bring a duplicative class action on behalf of the same class and against the same defendants, albeit with different named plaintiffs.
>
> The Court rules that the *Adams* anti-claim-splitting rationale applies in the present context, at least as against the Uponor Defendants. In such cases, a defendant is forced to defend duplicative class actions simultaneously. Plaintiffs may pursue their claims here individually (though they may not then join a class in a case with duplicative claims), but they may not make Defendants defend a duplicative class action, at least not in the way they have done . . . here. Although two groups of attorneys may bring duplicative class actions with different named plaintiffs in a race towards certification, here, the same group of attorneys has brought the duplicative actions, obviating the concerns in the contrary example where different named plaintiffs and their attorneys are competing for bonuses and attorney's fees, respectively, via the race to certification. Plaintiffs' attorneys are of course not

>adverse to themselves, and insofar as they might argue that their different sets of named plaintiffs have adverse interests in separately prosecuting the duplicative actions because they are competing for class representative bonuses, it is the attorneys themselves who have (potentially unethically) created this direct conflict of interests between their own clients in the present matter.
>
>In an appropriate case, the class of plaintiffs could be narrowly defined to include only those homeowners in certain developments, such that multiple class actions against the same defendants but by different groups of homeowners would not necessarily violate the anti-claimsplitting rule. But here, as in the other related cases, the class is very broadly defined to include every yellow-brass-aggrieved homeowner in southern Nevada. The *Slaughter* and *Fulton Park* cases preclude the present class action as against Uponor Defendants. The Court will therefore grant the motion to dismiss Uponor Defendants.

(Order 18:12–19:13, July 10, 2012, ECF No. 104 in Case No. 2:11-cv-1498). Likewise here, the determination of the *Slaughter* and *Fulton Park* cases, i.e., the certification of the class in either case, would preclude the present claims. Although the present putative class includes only those homeowners in the Anthem Highlands community, the putative classes in *Slaughter* and *Fulton Park* also include those homeowners.

### B.     Motions to Reconsider

Plaintiffs via this action sought to compel arbitration by "original purchasers" of the units, i.e., those who had purchased those units directly from the developer. In its February 24 and July 9 orders, the Court noted that the dispositive issue with respect to the requirement to arbitrate was not from whom a particular owner had purchased his unit, but whether there existed any arbitration agreement binding upon that owner. Arbitration is required (or not) based upon agreements to arbitrate. Plaintiffs have identified no statute or principle of law requiring arbitration based upon whether a unit owner has purchased his unit directly from the builder or developer. The Court noted in its July 9 order that the seven owners whom Defendant had identified as being "subsequent purchasers" allegedly not subject to arbitration had in fact signed agreements to arbitrate construction defect claims. In some cases the agreements were part of the purchase agreement, and in some cases they were separate agreements to arbitrate, but each of

the seven identified unit owners were bound to arbitrate. The Court therefore reaffirmed its previous ruling that any owner who had signed an arbitration agreement was required to arbitrate, and it ordered the parties to file a joint status report identifying which unit owners were and were not required to arbitrate according to the Court's ruling.[4]

The Court had also noted in its February 24 order that at least one of the exemplar arbitration agreements identified by Plaintiffs was not a real covenant, i.e., did not "run with the land." In the present motion, Plaintiffs argue that the Court "mistakenly" noted in its February 24 order that Plaintiffs had admitted that the covenants did not run with the land. But it in fact appears that counsel made the admission on the record at one point, although counsel later appeared to attempt to preserve the issue. Counsel argues that they did not intend to make the admission. The transcript, attached as Exhibit 2 to the present motion, also notes that Defendant's counsel later argued that they had moved to dismiss the claim to compel arbitration as against "subsequent purchasers" and that the motion had been fully briefed. The Court then noted that it was prepared to rule whether to dismiss as to "subsequent purchasers," i.e., those whose only connection to an arbitration agreement was the fact that they had purchased a unit from a person who had signed such an agreement, were bound to arbitrate. Counsel for Plaintiffs asked for leave to amend, but the Court noted amendment would be futile, because the claim was stated as sufficiently as it could be as a factual matter—it was a pure question of law. Counsel for Plaintiffs argued that the claim was sufficient, and the Court noted that it disagreed. The Court noted that it intended to dismiss the claim insofar as Plaintiffs intended to hold subsequent purchasers to the arbitration agreements.

The Court noted in its July 9 order that because it had compelled arbitration against any

---

[4] If necessary, the Court can make this determination on its own by examining the documentary evidence, owner-by-owner, but the Court should be able to expect that the parties can amicably delineate which owners must arbitrate according to a good faith interpretation of the Court's ruling.

unit owner who had signed an agreement to arbitrate, and because the agreements did not run with the land, that it appeared Plaintiffs had obtained all the relief they could obtain in the case. The Court noted that certain counterclaims appeared to be the only claims keeping the case open—counterclaims that the Court has noted are barred by the anti-claim-splitting rule due to the *Slaughter* cases—and it asked the parties to brief why the Court had jurisdiction over those claims.[5] It is this language Plaintiff asks the Court to reconsider. Plaintiffs argue that the Court appears to have granted summary judgment to Defendant on Plaintiffs' fifth cause of action to compel arbitration against subsequent purchasers. The Court clarifies that it considers its ruling on the issue final. The arbitration clauses—at least the arbitration clauses the Court has seen in the case thus far—do not run with the land.

Next, Plaintiffs ask the Court to reconsider its denial of their motion to dismiss the counterclaim for violation of Nevada's Deceptive Trade Practices Act, because Defendants have withdrawn that counterclaim as against Plaintiffs in their opposition to Plaintiff's previous motion to dismiss. Plaintiffs appear to be correct. The Court grants the motion.

Next, Defendant asks the Court to reconsider dismissal of the strict liability counterclaim and also to clarify that Plaintiffs will not to be able to inspect every single home in a given development, but only a reasonable representative sample. The Court declines to reconsider dismissal. Defendants also ask the Court to certify the question to the Nevada Supreme Court in the alternative or to certify the question for immediate appeal under Rule 54(b). The Court will not certify the question to the Nevada Supreme Court. The Court clarifies that Defendants are correct that only inspection of a representative sample is required. Of course, if Plaintiffs voluntarily repair every representative home they inspect, the class action may fail for lack of

---

[5] The parties' joint status report indicates some disagreement between the parties, but the parties agree that the Court has jurisdiction over the original claims pursuant to 28 U.S.C. § 1332(a) even if the defect counterclaims are barred, because there remain unresolved issues as to the arbitration claims.

1  typicality, because class members must share a typical harm, and part of the harm is that the
2  developer failed to repair after being given an opportunity to inspect.  Also, any eventual class
3  member that does not opt out will have to submit to an opportunity to inspect and repair as part
4  of the relief in any final judgment.

        **C.**      **Other Motions**

6          Uponor asks the Court to extend the time for it to respond to a third-party complaint until
7  the Nevada Supreme Court determines whether there is personal jurisdiction over it in Nevada.
8  As recounted in several orders in several cases, this Court has determined there is jurisdiction
9  under federal law, and the decision of the Nevada courts are inapposite.  Finally, Plaintiffs ask
10 the Court to shorten time on their motion to reconsider.  The Court denies the motion as moot.

11 ///
12 ///
13 ///
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss Third Party Complaint and Strike Class Allegations (ECF No. 77) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Reconsider (ECF No. 82) is DENIED.

IT IS FURTHER ORDERED that the Defendants' Motion to Reconsider (ECF No. 91) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Reconsider (ECF No. 94) is DENIED.  The Court declines to reconsider dismissal of the strict liability claims or to certify for immediate appeal or certify the issue to the Nevada Supreme Court.  The Court clarifies that Plaintiffs may only inspect a representative sample of the homes (up to 10%, which Plaintiffs may select).

IT IS FURTHER ORDERED that the Motion for Extension of Time (ECF No. 73) and the Motion to Shorten Time (ECF No. 84) are DENIED.

IT IS SO ORDERED.

Dated this 14th day of January, 2013.

_____
ROBERT C. JONES
United States District Judge