1

2

3

4

5

6                        **UNITED STATES DISTRICT COURT**

7                              **DISTRICT OF NEVADA**

8
GREYSTONE NEVADA, LLC et al.,               )
9                                           )
              Plaintiffs,                   )
10                                          )
          vs.                               )          2:11-cv-01424-RCJ-CWH
11                                          )
ANTHEM HIGHLANDS COMMUNITY                  )                **ORDER**
12   ASSOCIATION,                           )
                                            )
13            Defendant.                    )
_____     )

14

15          These consolidated removed class actions arise out of the installation in new homes of

16   allegedly defective high-zinc-content brass ("yellow brass") plumbing fittings.[1]  Pending before

17   the Court is Third-party Defendants' motion to dismiss the Third Party Complaint and strike the

18   class allegations therein, as well as three motions to reconsider, a motion to shorten time, and a

19   motion to extend time.

20   ///

21

22
          [1]The cases are factually related to the *Slaughter v. Uponor* case, which has been reversed
23   and remanded, and which is once again pending before the Court.  The Court has not
     consolidated the present cases with the *Slaughter* case, and the Court of Appeals' ruling in
24   *Slaughter* does not affect the present cases, which concern arbitration requirements, as opposed
     to class action certification and the interplay between Rule 23 and the construction-defect notice
25   procedures under state law.

1

## I.     FACTS AND PROCEDURAL HISTORY

2          On or about June 30, 2011, Defendant Anthem Highlands Community Association

3 ("Anthem Highlands") forwarded to Plaintiffs Greystone Nevada, LLC ("Greystone") and U.S.

4 Home Corp. ("U.S. Home") notices of construction defects (the "Notices") pursuant to Nevada

5 Revised Statutes ("NRS") section 116.3102(d) [sic]. (*See* Compl. ¶ 7, Sept. 2, 2011, ECF No. 1).

6          The Notices stated that Anthem Highlands, in its statutory representative capacity,

7 thereby made the claims against Plaintiffs for construction defects in Anthem Highlands'

8 members' homes based upon the installation of plumbing systems with defective yellow brass

9 components. (*Id.* ¶¶ 8–9).  Each of the individual homeowners in Anthem Highlands (the

10 "Homeowners") had previously entered into arbitration agreements with Plaintiffs, agreeing to

11 arbitrate potential disputes, and these agreements are alleged to be covenants running with the

12 land enforceable against any present owners. (*See id.* ¶ 11).

13         Plaintiffs sued Anthem Highlands in this Court on five nominal causes of action: (1)–(3)

14 declaratory judgment (impliedly under 28 U.S.C. § 2201); (4) injunctive relief (impliedly under

15 § 2202); and (5) compulsion of arbitration under 9 U.S.C. § 4.[2]  Defendants moved to dismiss for

16 lack of subject matter jurisdiction and for failure to state a claim, and Plaintiffs moved to compel

17 arbitration, i.e., for offensive summary judgment on the fifth cause of action.  The Court denied

18 the motions to dismiss, finding that there was diversity jurisdiction supporting the claims,

19 because Defendants had statutory authority to sue on behalf of the individual homeowners,

20 making them real parties in interest under the rules, whose claim was the aggregate of the claims

21 of the individual parties it represented.  The Court also found that Plaintiffs had sufficiently

22 stated a claim.  The Court granted the motion to compel arbitration in part, ruling that arbitration

23

24         [2]In the '1422 Case, Greystone sued Defendant Fiesta Park Homeowners' Association
("Fiesta Park") upon similar facts, using a substantially identical complaint.  The actions have
25 been consolidated, with the present case as the lead case.

was required as to any homeowner who had individually signed the arbitration agreement, but

that the arbitration agreement was not a real covenant enforceable against a subsequent

purchaser.[3]  The Court left it to the arbitrator(s) whether homeowners could consolidate their

arbitration hearings under the arbitration agreement.  The Court refused to dismiss the claims for

declaratory and injunctive relief based upon lack of jurisdiction.  Finally, the Court solicited a

proposed consolidated judgment compelling arbitration.  Plaintiffs submitted a proposed

judgment, which the Court signed.  The Judgment requires arbitration by all homeowners

identified in Exhibit A thereto, which lists 271 homeowners (counting tenants-in-common as a

single party).  The operative part of the judgment reads:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that in accordance with the Court's February 24, 2012 Order, judgment is hereby entered in these consolidated actions against the Homeowners compelling them to arbitrate any and all claims they have related to alleged "yellow brass" plumbing components and systems within their respective Properties, including any and all claims related to the January 27, 2011 and June 30, 2011, NRS 40.600, *et seq.* Notices of Defects forwarded to Plaintiffs by Defendants on behalf of the Homeowners. The arbitrations must proceed pursuant to the terms of the Arbitration Agreements.

> The Court shall retain jurisdiction in these actions over the homeowners listed in Exhibit "A" for the purposes set forth within sections 9 though 16 of the Federal Arbitration Act (9 U.S.C. § 9, *et seq.*).

(J. 2:3–12, Mar. 14, 2012, ECF No. 31).  The parties filed several motions to reconsider, to

dismiss, and to stay the case.  The Court denied the motions to reconsider, granted the motions to

dismiss the Counterclaim in part, with leave to amend in part, denied the motions to stay, struck a

motion to dismiss filed improperly under Case No. 2:11-cv-1422, and order the parties to file a

joint status report listing which homeowners are and are not required to arbitrate consistent with

the Court's rulings thus far and discussing Article III standing under *Hunt v. Washington State*

*Apple Advertising Commission*, 432 U.S. 333 (1977).

---

[3]At oral argument, Plaintiffs retracted their argument that the agreements were real covenants and agreed to pursue arbitration only against those homeowners who had signed the agreements.

1   **II.   LEGAL STANDARDS**

2      Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

3   claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

4   what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

5   (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

6   that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule

7   12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720

8   F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for

9   failure to state a claim, dismissal is appropriate only when the complaint does not give the

10  defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*

11  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is

12  sufficient to state a claim, the court will take all material allegations as true and construe them in

13  the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

14  Cir. 1986).  The court, however, is not required to accept as true allegations that are merely

15  conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

16  *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

17  with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation

18  is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*,

19  550 U.S. at 555).

20     "Generally, a district court may not consider any material beyond the pleadings in ruling

21  on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the

22  complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

23  *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents

24  whose contents are alleged in a complaint and whose authenticity no party questions, but which

25  are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

1   motion to dismiss" without converting the motion to dismiss into a motion for summary

2   judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule

3   of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

4   *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court

5   considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

6   summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.

7   2001).

8   **III.    ANALYSIS**

9       **A.    Motion to Dismiss**

10          The class identified in the TPC consists of all yellow-brass-aggrieved "owners or

11  residences constructed in the Anthem Highlands community . . . ." (*See* Answer, Counterclaim,

12  and TPC 29, Mar. 9, 2012, ECF No. 27).  Defendants bring eight class claims against TPD.  TPD

13  ask the Court to dismiss the TPC for three reasons: (1) lack of Article III standing; (2)

14  impermissible claim-splitting; and (3) failure to state a claim.  The Court grants the motion based

15  upon impermissible claim-splitting.  As the Court recently ruled in a related case:

16          A suit is duplicative and should be dismissed for improper claim splitting if an earlier
            suit by the same plaintiff against the same defendant for the same claim is already
17          pending such that the eventual adjudication of the previous suit would preclude the
            claim in the later-filed suit. *See Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684,
18          688–89 (9th Cir. 2007).  Movants argue that the rule should apply where the same
            law firms bring a duplicative class action on behalf of the same class and against the
19          same defendants, albeit with different named plaintiffs.

20          The Court rules that the *Adams* anti-claim-splitting rationale applies in the
            present context, at least as against the Uponor Defendants.  In such cases, a defendant
21          is forced to defend duplicative class actions simultaneously.  Plaintiffs may pursue
            their claims here individually (though they may not then join a class in a case with
22          duplicative claims), but they may not make Defendants defend a duplicative class
            action, at least not in the way they have done . . . here.  Although two groups of
23          attorneys may bring duplicative class actions with different named plaintiffs in a race
            towards certification, here, the same group of attorneys has brought the duplicative
24          actions, obviating the concerns in the contrary example where different named
            plaintiffs and their attorneys are competing for bonuses and attorney's fees,
25          respectively, via the race to certification.  Plaintiffs' attorneys are of course not

1

2

3

adverse to themselves, and insofar as they might argue that their different sets of named plaintiffs have adverse interests in separately prosecuting the duplicative actions because they are competing for class representative bonuses, it is the attorneys themselves who have (potentially unethically) created this direct conflict of interests between their own clients in the present matter.

4

5

6

7

8

In an appropriate case, the class of plaintiffs could be narrowly defined to include only those homeowners in certain developments, such that multiple class actions against the same defendants but by different groups of homeowners would not necessarily violate the anti-claimsplitting rule. But here, as in the other related cases, the class is very broadly defined to include every yellow-brass-aggrieved homeowner in southern Nevada. The *Slaughter* and *Fulton Park* cases preclude the present class action as against Uponor Defendants. The Court will therefore grant the motion to dismiss Uponor Defendants.

9

(Order 18:12–19:13, July 10, 2012, ECF No. 104 in Case No. 2:11-cv-1498). Likewise here, the

10

determination of the *Slaughter* and *Fulton Park* cases, i.e., the certification of the class in either

11

case, would preclude the present claims. Although the present putative class includes only those

12

homeowners in the Anthem Highlands community, the putative classes in *Slaughter* and *Fulton*

13

*Park* also include those homeowners.

14

## B.   Motions to Reconsider

15

Plaintiffs via this action sought to compel arbitration by "original purchasers" of the

16

units, i.e., those who had purchased those units directly from the developer. In its February 24

17

and July 9 orders, the Court noted that the dispositive issue with respect to the requirement to

18

arbitrate was not from whom a particular owner had purchased his unit, but whether there existed

19

any arbitration agreement binding upon that owner. Arbitration is required (or not) based upon

20

agreements to arbitrate. Plaintiffs have identified no statute or principle of law requiring

21

arbitration based upon whether a unit owner has purchased his unit directly from the builder or

22

developer. The Court noted in its July 9 order that the seven owners whom Defendant had

23

identified as being "subsequent purchasers" allegedly not subject to arbitration had in fact signed

24

agreements to arbitrate construction defect claims. In some cases the agreements were part of the

25

purchase agreement, and in some cases they were separate agreements to arbitrate, but each of

1   the seven identified unit owners were bound to arbitrate.  The Court therefore reaffirmed its

2   previous ruling that any owner who had signed an arbitration agreement was required to arbitrate,

3   and it ordered the parties to file a joint status report identifying which unit owners were and were

4   not required to arbitrate according to the Court's ruling.[4]

5         The Court had also noted in its February 24 order that at least one of the exemplar

6   arbitration agreements identified by Plaintiffs was not a real covenant, i.e., did not "run with the

7   land."  In the present motion, Plaintiffs argue that the Court "mistakenly" noted in its February

8   24 order that Plaintiffs had admitted that the covenants did not run with the land.  But it in fact

9   appears that counsel made the admission on the record at one point, although counsel later

10   appeared to attempt to preserve the issue.  Counsel argues that they did not intend to make the

11   admission.  The transcript, attached as Exhibit 2 to the present motion, also notes that

12   Defendant's counsel later argued that they had moved to dismiss the claim to compel arbitration

13   as against "subsequent purchasers" and that the motion had been fully briefed.  The Court then

14   noted that it was prepared to rule whether to dismiss as to "subsequent purchasers," i.e., those

15   whose only connection to an arbitration agreement was the fact that they had purchased a unit

16   from a person who had signed such an agreement, were bound to arbitrate.  Counsel for Plaintiffs

17   asked for leave to amend, but the Court noted amendment would be futile, because the claim was

18   stated as sufficiently as it could be as a factual matter—it was a pure question of law.  Counsel

19   for Plaintiffs argued that the claim was sufficient, and the Court noted that it disagreed.  The

20   Court noted that it intended to dismiss the claim insofar as Plaintiffs intended to hold subsequent

21   purchasers to the arbitration agreements.

22         The Court noted in its July 9 order that because it had compelled arbitration against any

23

24       [4]If necessary, the Court can make this determination on its own by examining the documentary evidence, owner-by-owner, but the Court should be able to expect that the parties

25   can amicably delineate which owners must arbitrate according to a good faith interpretation of the Court's ruling.

1    unit owner who had signed an agreement to arbitrate, and because the agreements did not run

2    with the land, that it appeared Plaintiffs had obtained all the relief they could obtain in the case.

3    The Court noted that certain counterclaims appeared to be the only claims keeping the case

4    open—counterclaims that the Court has noted are barred by the anti-claim-splitting rule due to

5    the *Slaughter* cases—and it asked the parties to brief why the Court had jurisdiction over those

6    claims.[5]  It is this language Plaintiff asks the Court to reconsider.  Plaintiffs argue that the Court

7    appears to have granted summary judgment to Defendant on Plaintiffs' fifth cause of action to

8    compel arbitration against subsequent purchasers.  The Court clarifies that it considers its ruling

9    on the issue final.  The arbitration clauses—at least the arbitration clauses the Court has seen in

10   the case thus far—do not run with the land.

11          Next, Plaintiffs ask the Court to reconsider its denial of their motion to dismiss the

12   counterclaim for violation of Nevada's Deceptive Trade Practices Act, because Defendants have

13   withdrawn that counterclaim as against Plaintiffs in their opposition to Plaintiff's previous

14   motion to dismiss.  Plaintiffs appear to be correct.  The Court grants the motion.

15          Next, Defendant asks the Court to reconsider dismissal of the strict liability counterclaim

16   and also to clarify that Plaintiffs will not to be able to inspect every single home in a given

17   development, but only a reasonable representative sample.  The Court declines to reconsider

18   dismissal.  Defendants also ask the Court to certify the question to the Nevada Supreme Court in

19   the alternative or to certify the question for immediate appeal under Rule 54(b).  The Court will

20   not certify the question to the Nevada Supreme Court.  The Court clarifies that Defendants are

21   correct that only inspection of a representative sample is required.  Of course, if Plaintiffs

22   voluntarily repair every representative home they inspect, the class action may fail for lack of

23   ───────────────

24          [5]The parties' joint status report indicates some disagreement between the parties, but the
     parties agree that the Court has jurisdiction over the original claims pursuant to 28 U.S.C.
25   § 1332(a) even if the defect counterclaims are barred, because there remain unresolved issues as
     to the arbitration claims.

1    typicality, because class members must share a typical harm, and part of the harm is that the

2    developer failed to repair after being given an opportunity to inspect.  Also, any eventual class

3    member that does not opt out will have to submit to an opportunity to inspect and repair as part

4    of the relief in any final judgment.

5          **C.**    **Other Motions**

6          Uponor asks the Court to extend the time for it to respond to a third-party complaint until

7    the Nevada Supreme Court determines whether there is personal jurisdiction over it in Nevada.

8    As recounted in several orders in several cases, this Court has determined there is jurisdiction

9    under federal law, and the decision of the Nevada courts are inapposite.  Finally, Plaintiffs ask

10    the Court to shorten time on their motion to reconsider.  The Court denies the motion as moot.

11    ///

12    ///

13    ///

14    ///

15    ///

16    ///

17    ///

18    ///

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss Third Party Complaint and Strike Class Allegations (ECF No. 77) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Reconsider (ECF No. 82) is DENIED.

IT IS FURTHER ORDERED that the Defendants' Motion to Reconsider (ECF No. 91) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Reconsider (ECF No. 94) is DENIED.  The Court declines to reconsider dismissal of the strict liability claims or to certify for immediate appeal or certify the issue to the Nevada Supreme Court.  The Court clarifies that Plaintiffs may only inspect a representative sample of the homes (up to 10%, which Plaintiffs may select).

IT IS FURTHER ORDERED that the Motion for Extension of Time (ECF No. 73) and the Motion to Shorten Time (ECF No. 84) are DENIED.

IT IS SO ORDERED.

Dated this 14th day of January, 2013.

_____
ROBERT E. JONES
United States District Judge