UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GREYSTONE NEVADA, LLC et al., | ) |
| Plaintiffs, | ) |
| vs. | )  2:11-cv-01424-RCJ-CWH |
| ANTHEM HIGHLANDS COMMUNITY ASSOCIATION, | )  **ORDER** |
| Defendant. | ) |

These consolidated removed class actions arise out of the installation into new homes of allegedly defective high-zinc-content brass ("yellow brass") plumbing fittings.[1]  Pending before the Court are a Motion to Dismiss (ECF No. 172), a Motion to Consolidate (ECF No. 173), and a

---

[1] The cases are factually related to the *Slaughter v. Uponor* case, which has been reversed and remanded, and which is once again pending before the Court. The Court has consolidated two groups of cases: (1) *Slaughter*-type cases, where homeowners or associations have sued developers, contractors, and manufacturers directly for defects; and (2) *Greystone*-type cases, like the present one, where developers have sued homeowners to compel arbitration of construction defect claims based upon arbitration clauses in sales contracts or separate agreements between those developers and homeowners. The present case is the lead case of the *Greystone*-type cases, with two member cases. Case No. 2:08-cv-1223 (*Slaughter v. Uponor*, a.k.a. *Hartmann v. Uponor*) is the lead case of the *Slaughter*-type cases, with nine member cases, three of which have been partially severed as to claims against the Vanguard/Viega entities. The lead case of the cases partially severed from *Slaughter v. Uponor* is Case No. 2:11-cv-1498 (*Waterfall HOA v. Viega*).

Motion to Strike (ECF No. 174).  For the reasons given herein, the Court grants the motion to dismiss, denies the motion to consolidate, and denies the motion to strike as moot.

I.   **FACTS AND PROCEDURAL HISTORY**

On or about June 30, 2011, Defendant Anthem Highlands Community Association ("Anthem Highlands") forwarded to Plaintiffs Greystone Nevada, LLC ("Greystone") and U.S. Home Corp. ("U.S. Home") notices of construction defects (the "Notices") pursuant to Nevada Revised Statutes ("NRS") section 116.3102(d) [sic]. (*See* Compl. ¶ 7, Sept. 2, 2011, ECF No. 1).

The Notices stated that Anthem Highlands, in its statutory representative capacity, thereby made the claims against Plaintiffs for construction defects in Anthem Highlands' members' homes based upon the installation of plumbing systems with defective yellow brass components. (*Id.* ¶¶ 8–9).  According to the Complaint, each of the individual homeowners in Anthem Highlands (the "Homeowners") had previously entered into arbitration agreements with Plaintiffs, agreeing to arbitrate potential disputes, and these agreements are alleged to be covenants running with the land enforceable against any present owners. (*See id.* ¶ 11).

Plaintiffs sued Anthem Highlands in this Court on five nominal causes of action: (1)–(3) declaratory judgment (impliedly under 28 U.S.C. § 2201); (4) injunctive relief (impliedly under § 2202); and (5) compulsion of arbitration under 9 U.S.C. § 4.  Defendants moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim, and Plaintiffs moved to compel arbitration, i.e., for offensive summary judgment on the fifth cause of action.  The Court denied the motions to dismiss, finding that there was diversity jurisdiction supporting the claims because Defendants had statutory authority to sue on behalf of the individual homeowners, making them real parties in interest under the rules, whose claim was the aggregate of the claims of the individual parties it represented.  The Court also found that Plaintiffs had sufficiently stated a claim.  The Court granted the motion to compel arbitration in part, ruling that arbitration was required as to any homeowner who had individually signed the arbitration agreement, but that the

arbitration agreement was not a real covenant enforceable against a subsequent purchaser. The Court left it to the arbitrator(s) whether homeowners could demand consolidated arbitration hearings under the arbitration agreement. The Court refused to dismiss the claims for declaratory and injunctive relief based upon lack of jurisdiction. Finally, the Court solicited a proposed consolidated judgment compelling arbitration. Plaintiffs submitted a proposed judgment, which the Court signed. The Judgment requires arbitration by all homeowners identified in Exhibit A thereto, which lists 271 homeowners (counting tenants-in-common as a single party). The operative part of the judgment reads:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that in accordance with the Court's February 24, 2012 Order, judgment is hereby entered in these consolidated actions against the Homeowners compelling them to arbitrate any and all claims they have related to alleged "yellow brass" plumbing components and systems within their respective Properties, including any and all claims related to the January 27, 2011 and June 30, 2011, NRS 40.600, *et seq.* Notices of Defects forwarded to Plaintiffs by Defendants on behalf of the Homeowners. The arbitrations must proceed pursuant to the terms of the Arbitration Agreements.
>
> The Court shall retain jurisdiction in these actions over the homeowners listed in Exhibit "A" for the purposes set forth within sections 9 though 16 of the Federal Arbitration Act (9 U.S.C. § 9, *et seq.*).

(J. 2:3–12, Mar. 14, 2012, ECF No. 31). The parties filed several motions to reconsider, to dismiss, and to stay the case. The Court denied the motions to reconsider, granted the motions to dismiss the Counterclaim in part, with leave to amend in part, denied the motions to stay, struck a motion to dismiss filed improperly under Case No. 2:11-cv-1422, and ordered the parties to file a joint status report listing which homeowners were and were not required to arbitrate according to the Court's rulings theretofore and discussing Article III standing under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977).

Uponor filed a motion to dismiss the Third Party Complaint against it for lack of Article III standing, impermissible claim splitting, and failure to state a claim. The Court granted the motion for impermissible claim splitting under *Adams v. California Department of Health*

*Services*, 487 F.3d 684 (9th Cir. 2007).  The Court declined to reconsider its rulings regarding arbitration or dismissal of the strict liability claim, but it granted reconsideration of its previous denial of Plaintiffs' motion to dismiss Defendant's counterclaim for violation of Nevada's Deceptive Trade Practices Act, because Defendant had withdrawn that counterclaim in its opposition to Plaintiffs' previous motion to dismiss.  Uponor moved to dismiss Plaintiffs' Amended Third-Party Complaint.  The Court granted the motion, noting that homeowners' claims against Greystone would have to be brought (and had already been brought) in the *Slaughter* cases.

Plaintiffs filed the Amended Consolidated Complaint ("ACC") on January 24, 2013. (*See* ACC, Jan. 24, 2013, ECF No. 159).  The ACC lists four causes of action: (1) declaratory judgment (Chapter 40); (2) declaratory judgment (arbitration); (3) injunctive relief; and (4) compulsion of arbitration under 9 U.S.C. § 4.  Defendants filed an Answer on February 8, 2013. (*See* Answer, Feb. 8, 2013, ECF No. 165).  Defendants filed an Amended and Consolidated Counterclaim ("ACCC") on March 1, 2013, twenty-one days later. (*See* ACCC, Mar. 1, 2013, ECF No. 168).

## II. DISCUSSION

Three motions are now pending before the Court.  First, Plaintiffs ask the Court to dismiss the ACCC for untimeliness and failure to comply with the Court's July 9, 2012 order (the "Order").  Second, Plaintiffs have asked the Court to consolidate the counterclaims in the ACCC into the *Slaughter* case.  Third, Plaintiffs have asked the Court to strike all class allegations in the ACCC and all allegations concerning express warranties.

### A. Motion to Dismiss

Plaintiffs note that Defendants' counterclaims are compulsory under Rule 13(a), because they arise out of the same transaction or series of transactions that forms the basis for the Complaint.  Plaintiffs note that Defendants' counterclaims were not included in the Answer, but

only in the ACCC, filed without leave. Plaintiffs argue that the Court should therefore dismiss the ACCC as untimely pled. The Court rejects this argument. Defendants filed the ACCC twenty-one days after serving the Answer to the ACC, which is within the time a party is permitted to amend a pleading as a matter of right. *See* Fed. R. Civ. P. 15(a)(1)(A). Although the Answer contains no counterclaim, it was titled as if Defendants intended to include one. Under the liberal amendment standards, the Court will treat the ACCC as a timely amendment to the Answer that adds counterclaims.

Next, Plaintiffs argue that the Court should dismiss the ACCC because Defendants have not complied with Chapter 40. *See* Nev. Rev. Stat. § 40.647(2) (mandating dismissal without prejudice if a Chapter 40 plaintiff files suit without complying with subsection 1 (inspection and opportunity to repair) or section 40.645). Moreover, the failure in this case constitutes failure to comply with the Order. Plaintiffs note that the Court previously denied their previous motion to dismiss on this basis without prejudice but also ordered that Defendants "must permit access to any home covered by the notices, for inspection and repair." (*See* Order 10:16–17, July 9, 2012, ECF No. 75). Plaintiffs allege that Defendants have yet to provide access to a single home.

Defendants respond that the Court later clarified (or reconsidered), ruling that Plaintiffs could inspect a representative sample of up to 10% of the homes, which Plaintiffs could select:

> The Court clarifies that Defendants are correct that only inspection of a representative sample is required.
>
> . . . .
>
> The Court clarifies that Plaintiffs may only inspect a representative sample of the homes (up to 10%, which Plaintiffs may select).

(Order 8:20–21, 10:10–12, Jan. 14, 2013, ECF No. 156). Defendants argue that they have refused to permit any inspections because Plaintiffs demand to inspect every home.[2]

---

[2] The Court notes that Defendants' proper response to such an impasse would be to permit inspections until the 10% threshold is reached and to refuse access thereafter.

Page 5 of 7

1       Plaintiffs reply that although they have not ceded their legal position that they have a right
2 to inspect every home, they have not demanded this as a condition of inspections but have in fact
3 sent Defendants requests to inspect a representative sampling, in accordance with the Court's
4 orders. Exhibit D to the Reply is a March 1, 2013 letter from Plaintiffs' counsel to Defendants'
5 counsel proposing a list of fifty-four (54) homes for inspection. Exhibit C to the Reply is a
6 February 13, 2013 letter from Defendants' counsel to Plaintiffs' counsel proposing a list of forty-
7 four (44) homes for inspection. But Plaintiffs claim that Defendants have in fact refused access
8 even to the single home on Defendants' own proposed list that Plaintiffs asked to inspect. The
9 Court has been clear that Plaintiffs may select the homes for inspection.

10       Although the Court is concerned that Defendants appear to be intransigent—and similar
11 intransigence may have far-reaching effects on the claims in the *Slaughter* cases—ultimately,
12 none of this really matters in the present context. The Court has already made clear that the
13 counterclaims related to construction defects are improperly pled in the *Greystone* cases under
14 the anti-claim-splitting rule, because those claims are already brought directly in the *Slaughter*
15 cases by the same attorneys representing the same putative class. (*See* Order, Apr. 25, 2013, ECF
16 No. 188; Order, Jan. 14, 2013, ECF No. 157). The Court dismisses the ACCC for that reason.

17     **B.**     **Motion to Consolidate**

18       Plaintiffs ask the Court to consolidate the counterclaims in the present case into the
19 *Slaughter* case. Plaintiffs note that the Third Amended Consolidated Class Action Complaint
20 ("TACCAP") in the *Slaughter* case did not include claims by Anthem Highlands or Fiesta Park,
21 but that Defendants only (improperly) pled those claims as counterclaims in the present case.
22 The Court denies the motion, because there is simply nothing to consolidate. The counterclaims
23 improperly pled in this case have been dismissed, because Defendants had no leave to plead them
24 but were specifically ordered to include them in the TACCAP in the *Slaughter* case if they
25 wished to maintain them. If they wish to abandon the claims altogether, that is Defendants'

decision, or they may join as Plaintiffs in the *Slaughter* case.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 172) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Consolidate (ECF No. 173) is DENIED.

IT IS FURTHER ORDERED that the Motion to Strike (ECF No. 174) is DENIED as moot.

IT IS SO ORDERED.

Dated this 28th day of May, 2013.

_____
ROBERT C. JONES
United States District Judge